## YOUNG v. STATE OF INDIANA.

[No. 25,872. Filed November 15, 1932. Rehearing denied January 30, 1933.]

*H. B. Pike* and *Howard H. Bates,* for appellant.

*James M. Ogden,* Attorney-General, and *Earl B. Stroup,* Deputy Attorney-General, for the State.

TREANOR, J.—Appellant was charged by affidavit under Sec. 2470 Burns Ann. Ind. St. 1926, Acts 1905, p. 584, with the embezzlement of two hundred sixty-eight dollars and eighty-five cents of the lawful and current money of the United States of America, "to the possession and ownership of which money the Prudential Life Insurance Company, a corporation, was then and there lawfully entitled." Appellant entered a plea of not guilty and trial before the court, without a jury, resulted in a finding of guilty, on which finding judgment was rendered. Appellant filed a motion for a new trial based on the following two causes:

1. That the finding of the court is contrary to law.

2. That the finding of the court is not sustained by sufficient evidence.

The court's action in overruling the motion for new trial is the sole error assigned on appeal.

There was evidence which tended to establish the following: The appellant was an agent of the Prudential Insurance Company and was authorized to adjust losses. One James Paul Shindledecker was claimant under two policies of insurance, one for $270.00, the other for $490.00, issued upon the life of his wife who died May 21, 1928. The policies had been sold by appellant. Shindledecker "took the matter up" with appellant and "presented a claim to the Prudential Insurance Company." The claim was approved and a check in the sum of $756.40 payable to Shindledecker was received about a month later at the Indianapolis office, from the home office of the company. The check was turned over to the appellant by the cashier. About July 1, 1928, appellant met Shindledecker and, according to the latter's testimony, showed him the check and a letter and told him "they were to hold the second policy until further information" and that he would give Shindledecker a check for $487.55 (the amount due under the large policy) and hold back the other until they got additional information. At appellant's request Shindledecker endorsed the check and gave it to appellant who deposited it in his own account in the Fletcher American National Bank and sent Shindledecker a check for $487.55 drawn on appellant's account. Shindledecker received no other money from appellant or the company until after he filed suit against the company; thereafter the company paid the balance of Shindledecker's claim. When Mr. Day, superintendent of the Indianapolis district of the Prudential company, told appellant that Shindledecker "claimed he had taken part of the money" appellant said that he had taken Shindledecker to the bank to identify him to get the check cashed and that "there was nothing to it." Appellant testified that he loaned Shindledecker $100.00 in cash about the 22nd or 23rd of May and "approximately

$160.00" in cash at the time Shindledecker endorsed the check.

Appellant's points in support of his contention that the finding of the court is not sustained by sufficient evidence and is contrary to law may be summarized as follows:

1. When money is alleged to have been embezzled, it is not sufficient to prove that a check was embezzled.

2. The value of all property alleged to have been embezzled, unless it is money, must be proven.

3. There was no proof that the Prudential Life Insurance Company was entitled to the check, but on the contrary the evidence specifically shows that James P. Shindledecker was entitled to the check.

4. There was a delivery of the check to Shindledecker; the offense that should have been charged in this case was that of obtaining goods under false pretenses.

The evidence does not support appellant's contention that he delivered the check for $756.40 to the beneficiary, Shindledecker, but rather that he only permitted the latter to have the check solely for the purpose of endorsement and that the appellant retained control of the check throughout the transaction.[1] Consequently the beneficiary acquired no interest in the check as a result of appellant's act, and as between Shindledecker and the Prudential Insurance Company, the check remained the property of the latter. In view of the fact that appellant was agent of the company, with authority to adjust losses, and the further fact that Shindledecker endorsed the check at appellant's request, the company's obligation to the beneficiary was not discharged by the endorsement of the check.

---

[1] "The delivery of a document is more than the production of it; for delivery imports a surrender or parting with possession for a permanent purpose." *Western Union Tel. Co.* v. *Locke, Adm.* (1886), 107 Ind. 9, 13, 7 N. E. 579, 582.

Appellant contends that "when money is alleged to have been embezzled it is not sufficient to prove that a check was embezzled," but the trial court undoubtedly found, as the evidence warranted, that the appellant intended to and did embezzle $268.85, being the difference between the sum which he paid Shindledecker and the face of the Prudential Insurance Company's check. The evidence shows that the defendant, by virtue of his employment, was in possession of a check belonging to his employer and that he deposited the check in his own bank account and issued checks against the account, which checks were paid by the bank. In the case of *People* v. *Crane* (1917), 34 Cal. App. 599, 608, 168 Pac. 377, the Court held that evidence showing the receipt of a draft by the defendant, the deposit of the draft in the personal account of the wife and the subsequent issuance of checks against the account, including the amount of the draft, sustained a charge of embezzlement of money and that there was no variance between the proof and the charge. In the case of *People* v. *Gorman* (1928), 94 Cal. App. 397, 27 Pac. 361, 362, the defendant was convicted of embezzlement. He had caused checks to be issued by the corporation employing him, and of which he was an officer, in payment for metal which was never actually received, and ultimately the proceeds of the checks were received by the defendant and appropriated to his own use. In disposing of the contention that a "check," if anything, and not money was embezzled the California Court comments as follows:

"Appellant also urges that a variance existed as between the allegations contained in the information and the 'proof,' in that the embezzlement as charged in the information was as of so much money; whereas the evidence showed that, if guilty at all, the offense consisted in the embezzlement of a check. But, as hereinbefore stated, the evidence

was sufficient to justify the conclusion that by means and methods designed and adopted by defendant certain specified moneys belonging to the corporation, which in fact were within the custody and control of defendant, or had been entrusted to him by the corporation, were fraudulently appropriated by defendant to his own use and benefit, from which it results that the contention of defendant in this regard cannot be sustained."

The trial court would have been warranted by the evidence in finding that the procurement of Shindledecker's endorsement to the check, the appellant's deposit of the check in his own bank account and the issuance of his personal check to Shindledecker for $487.55 constituted the device or means adopted, or were the instrumentalities used, by appellant to appropriate $268.85 of the funds of his employer, the Prudential Insurance Company. That the purpose and result of the transaction was that appellant should and did gain $268.85 and that his employer should and did lose a like sum must have been apparent to the trial court.

"The purpose and the result are obvious. He received the money. In what form is not important. It has disappeared by his willful and intentional act. . . . The loss was just as keen or severe as if it had been cash. The company is the only one that lost and it is the only one he intended should lose. This transaction has a very definite meaning and understanding in everyday life. All we need to do is to treat it naturally. Means for facilitating business do not change the real character of the transaction. In the administration of the criminal law we are more interested in the substance and effect of the transaction than in technical rules of terminology. Defendant understood the charge in the indictment. He has not been misled. His substantial rights have not been invaded. We construe this transaction as an embezzlement of the company's money within the meaning of (the statute)." *State* v. *Peterson* (1926), 167 Minn. 216, 208 N. W. 761, 763.

Appellant contends that "the offense that should have been charged in this case was that of obtaining goods under false pretense, and (that) the proof does not sustain the conviction for embezzlement." (Appellant's Brief, p. 18.) This contention rests upon the assumption that the check was delivered to the payee, Shindledecker, and was then fraudulently obtained from him by appellant. But as already indicated we hold that the trial court was justified in finding that the check was not delivered to the payee and that, consequently, he had neither possession of, nor title to same. The appellant fraudulently induced the payee to indorse the check and was then enabled to obtain and to misappropriate $268.85 of his employer's money. Our embezzlement statute is much broader than the earlier statutes and under it an employee may be guilty of embezzlement when he merely has "access to or control of" any money or thing of value which he wrongfully appropriates, and it is not necessary that he have possession of the money or thing of value. The charge in the affidavit that the appellant embezzled property consisting "of the lawful and current money of the United States of America, then and there of the value of $268.85, the property of the said Prudential Life Insurance Company, a corporation, and to the possession and ownership of which money the said Prudential Life Insurance Company, a corporation, was then and there lawfully entitled" was amply sustained by the evidence from which the trial judge reasonably could have found:

(1) That appellant, as employee, was entrusted with a check for the sum of $756.40 with which he was to settle two claims against his employer.

(2) That appellant, instead of delivering the check to the payee in settlement of the claim, fraudulently in-

duced the payee to indorse the check by falsely representing that one claim was in dispute and by promising to send the claimant a check to cover the larger claim of $487.55.

(3) That appellant retained control of check and deposited same in his personal account and received credit therefor.

(4) That the check thus deposited was sent through for collection, paid by the drawee bank and charged to the employer's account.

(5) That appellant paid one claim out of the deposit which he thus obtained and appropriated the balance to his own use, the balance amounting to $268.85.

In order to hold that the verdict is not sustained by the evidence it would be necessary to disregard the accomplished fact and to regard only the acts which constituted the device by which the appellant succeeded in misappropriating $268.85 of his employer's money.

As respects appellant's contention that the evidence fails to show that the check in question was charged to the account of the drawer we conclude that the oral testimony and the check which is a part of the record were sufficient to justify the trial court's conclusion that the drawee bank paid the amount of the check and charged the same to the account of the drawer.

Appellant also contends that there was no proof of the value of the property alleged to have been embezzled. But since we have construed appellant's acts to constitute an embezzlement of a sum of money amounting to $268.85 it is not necessary to discuss the foregoing contention of appellant. As we view the record we conclude that the trial court considered that the act of embezzlement occurred when the appellant appropriated to his own use $268.85 of the deposit which, as between himself and his employer, belonged to his employer and which the appellant had succeeded in

placing under his own name by the unauthorized use of the check which had been entrusted to him. We hold that the trial court did not err in overruling appellant's motion for a new trial.

Judgment affirmed.

Roll, C. J., dissents.

### CONCURRING OPINION.

MYERS, J.—I concur in the result reached by Judge Treanor. My reasons for my conclusion follow:

The record at bar does not satisfactorily disclose the theory upon which this case was tried. The affidavit charges that money was embezzled and hence clearly charges appellant with the offense of embezzlement, as defined by statute, §2470 Burns 1926. The evidence, in some respects, indicates a trial on the theory that appellant embezzled a check. The amount in dollars said to have been embezzled was $268.85. There is nothing in the record to indicate that a check for any such amount had any part in the transaction. Appellant was the agent of the Prudential Insurance Company and he was authorized by that company to adjust a death claim on two policies payable to Shindledecker as beneficiary. The adjustment fixed the Company's loss at $756.40. The Company placed in appellant's hands its check drawn on a Chicago bank payable to Shindledecker for $756.40. This check, although endorsed by Shindledecker, was never turned over to him in payment of his claims. Appellant, on July 3rd, deposited this check, together with $103 in currency and 60 cents in change, totaling $860, in the Fletcher American National Bank of Indianapolis, and had the same credited to his individual account. Prior to this date he had no account in this bank. Thereafter, it appears from the books of the bank that checks, to whom is not dis-

closed, were drawn against this account by appellant and cashed, July 5th, $230; July 7th, $75; July 11th, $12; July 11th, $487.55; July 12th, $50; July 13th, $4, and Aug. 2nd, 83 cts., leaving in the bank to his credit on this last date, 62 cts. It is admitted that the check for $487.55 was issued to Shindledecker in payment of the larger one of his claims. The payment of this last check reduced appellant's balance to $55.45, which, except 62 cts., was checked out in the amounts above stated.

The evidence shows that the Insurance Company, after Shindledecker brought suit against it, paid to him his other claim amounting to $268.85. The evidence fairly shows that none of the checks drawn by appellant against his account in the bank, save the one, were in favor of Shindledecker. The credit in the bank of the Insurance Company check, although in the name of appellant, must, in the absence of a showing to the contrary, and there was no such showing, be regarded as under his control as the agent of the Company for a specific purpose. For aught appearing, the Shindledecker claims were to be paid in money. The method adopted by the Company for transferring the money from its Chicago bank account to Shindledecker was by check. For that purpose the check was drawn and in due course, on July 5th, it was paid to the Indianapolis bank. Through these instrumentalities the Company's check was changed to money in bank, subject to the personal check of appellant. While it may be said that as between the Indianapolis bank and appellant the relation of debtor and creditor existed, yet, as between the Insurance Company and appellant they were principal and agent as to responsibility for the money obtained by cashing the Shindledecker check. The mere cashing of the check by appellant, under all of the circumstances here shown, was not an infraction of the

statute, *supra*. The violation took place when he converted to his own use or benefit, if such be the case, the money for which he had, by circuitous means, obtained credit in bank. Of the money so transferred to the control of appellant, he properly accounts for $487.55. As to the remainder, $268.85, the inference might well be drawn from the evidence that it was appropriated by appellant to uses otherwise than that authorized by the Company, or for its benefit.

The affidavit charges appellant with the embezzlement of money in violation of a statute which must be strictly construed, yet, in my judgment, the requirements of the statute are sufficiently met when money is intrusted to an agent, whether cash in hand or, in the usual course of business, money in bank, and he misappropriates it to his own use or benefit, the evidence otherwise being sufficient, he would be guilty as charged regardless of the fact, as here, that checks were employed by him in accomplishing his purpose.

Under all of the circumstances shown in this case, supplemented on appeal by the presumption in favor of correct action on the part of the trial court (*Indianapolis Traction, etc., Co.* v. *Hensley* [1917], 186 Ind. 479, 495, 115 N. E. 934, 117 N. E. 854), I am convinced that we would not be justified in disturbing the judgment rendered below.

Travis, J., concurs.