## RAPHAEL URCIOLO *v.* STATE OF MARYLAND

[No. 13, September Term, 1973.]

*Decided October 23, 1973.*

124

The cause was argued before ORTH, C. J., and THOMPSON and MENCHINE, JJ.

*Joseph Forer* for appellant.

*John P. Stafford, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Clarence W. Sharp, Assistant Attorney General, Richard J. Kinlein, State's Attorney for Howard County, Timothy Welsh, Deputy State's Attorney for Howard County* and *Joseph V. Reina, Assistant State's Attorney for Anne Arundel County,* on the brief, for appellee.

MENCHINE, J., delivered the opinion of the Court.

Raphael Urciolo was tried and convicted of embezzlement in a non-jury trial in the Circuit Court for Howard County after removal from the Circuit Court for Anne Arundel

County. At that trial he was found not guilty of: (1) larceny after trust; (2) grand larceny; (3) conspiracy to commit larceny after trust; (4) conspiracy to commit grand larceny, and (5) conspiracy to embezzle. The present appeal, accordingly, deals exclusively with his conviction for embezzlement. Under the indictment for that offense it was charged that the appellant: "Did feloniously embezzle from John Rogers miscellaneous United States currency of the total value of $7500.00."

The charge arose out of one of the transactions relating to a tract of land fronting on Waugh Chapel Road in Anne Arundel County. While we need not detail in full the complex background of that property (described by the Court of Appeals as an "episodic maze of facts;"[1] an "intricate webb of evidence;"[2] and "labyrinthine facts"[3]) it is necessary to discuss some of the circumstances leading up to a settlement for that property from which the charge arises.

Raphael Urciolo, at the recommendation of a priest who was a mutual friend, was engaged by one John J. Rogers to assist in legal proceedings involving the property. Rogers had purchased the land at a tax sale many years before. Heirs of the former owners, claiming title to the property, had filed an action to set aside the tax sale and deed. That litigation was terminated, on the face of the proceedings, by passage of a decree that sustained the bill of the heirs of the former owners and declared Rogers' tax sale title invalid. In actuality, the parties submitted to the passage of that decree after agreeing to a settlement whereby Rogers and the disputing heirs would become co-owners of the property.

An agreement, executed on September 17, 1964, provided that title to the land would be taken by Thomas E. Chance (as trustee for the heirs) and by Joseph J. Urciolo (as trustee for Rogers). The agreement provided further that the deed to be executed pursuant to it should appear to be an absolute

1. *McGinnis v. Chance*, 247 Md. 393, 394, 231 A. 2d 63, 64.
2. *McGinnis v. Rogers*, 262 Md. 710, 713, 279 A. 2d 459, 461.
3. *Arban v. Rogers*, 262 Md. 738, 739, 279 A. 2d 457.

conveyance in fee simple without disclosure of the fiduciary status of the grantees. On March 24, 1965 a deed was executed and recorded vesting record title in Thomas E. Chance and Joseph J. Urciolo. "as joint tenants and not as tenants in common."

This unusual course apparently was followed because Rogers previously had executed on September 23, 1963 an option contract of sale to one McGinnis deemed by the principals to be unfavorable to their interests.[4] Joseph J. Urciolo and Chance, immediately upon expiration of the option date fixed in the McGinnis contract, entered into a contract of sale of the property to Frank Calcara for $94,600.00. (The McGinnis option was for $50,000.00.) The Calcara contract thereafter was assigned to John V. Arban, Pascal della Badia and Florence E. Urciolo and in due course settlement under it was effected in the office of Winson G. Gott, Jr., Esquire, in Annapolis, Maryland. Appellant was in attendance at that settlement. Events occurring in and subsequent to that settlement resulted in Raphael Urciolo's trial and conviction.

On May 26, 1965 Chance and Joseph J. Urciolo executed a deed of the property to John V. Arban, Pascal della Badia and Florence E. Urciolo, in fee simple. A purchase money mortgage in the amount of $70,600.00 was given by Arban, et al. to Chance and Joseph J. Urciolo. At the trial below exhibits "6a" (memorandum of settlement dated May 24, 1965); "6b" (memorandum of settlement dated May __, 1965); "6c" (a document dated June 12, 1965) were received in evidence.

Exhibit 6a indicated a purchase price of $94,600.00, provided by a purchase money mortgage for $70,600.00, with the balance paid in cash.

Exhibit 6b, with the heading "May __, 1965", indicated that payments by buyers shown on exhibit 6a consisted in part of deductions totaling $9616.75, of which $9460.00

---

**4.** The validity *vel non* of the McGinnis contract was the subject of subsequent litigation, twice reaching the Court of Appeals. *McGinnis v. Chance* and *McGinnis v. Rogers*, both *supra*.

represented broker's commissions to Urciolo Realty Company. That exhibit then showed that the remaining balance of payments by buyers ($14,383.25) was distributed to Chance ($7191.63) and to Joseph J. Urciolo ($7191.62). (A footnote to the supposed distribution to Joseph J. Urciolo indicated deductions therefrom: for trustee's commissions to himself ($2365.00); for fees to Urciolo and Urciolo ($600.00); and for fees to Winson G. Gott, Jr. ($500.00). The exhibit thus indicated a reduced distribution to Joseph J. Urciolo of $3726.62.

State's exhibit 6c, dated June 12, 1965, showed that the buyers paid a lesser sum (in cash and deductions) than was indicated in the earlier settlement sheets (exhibits 6a and 6b) and than was required by the terms of the contract of sale. That exhibit indicated that buyers had paid only $10,300.00 in cash, (instead of $14,383.25) of which $7191.63 was paid to Thomas E. Chance, and $1319.84 paid to Winson G. Gott, Jr. for settlement costs and fee. Exhibit 6c ended with the notation: "Balance on hand — check herewith for $1788.53."

At the settlement a purchase money mortgage executed by Arban, Pascal della Badia and Urciolo to Joseph J. Urciolo and Thomas E. Chance, in the amount of $70,600.00, was duly recorded among the Land Records.

A letter written by Winson G. Gott, Jr. reads as follows:

"June 10, 1965

Urciolo & Urciolo
Counselors at Law
421 Fourth Street, N.W.
Judiciary Square
Washington 1, D.C.

Attention; Mr. Raphael G. Urciolo

Dear Raphael:

Have just received the Deed from the Clerk of Court after completion of indexing and recording and am enclosing same herewith.

Will send the balance of funds on hand and title policy. As stated to you, we were satisfied with the heirs of Queen and the judgments were not against the parties in title, the only exceptions being the Sanitary Commission Easement, the usual exception as to matters of survey and as my title examiner informed me of the recording of the McGinnis contract, an exception as to the effect, if any, of said contract, recorded after its expiration date.

Sincerely yours,

Winson G. Gott, Jr.

Enc."

It is noted that this letter bore the date June 10, 1965. The letter clearly indicates that settlement for the Waugh Chapel Road property was final in nature and implied a future transmittal of the "balance of funds."

It is to be noted also that the partial settlement sheet (Exhibit 6c) bears the date June 12, 1965. The check issued by Gott to appellant as attorney also bears that same date. That check for $1788.53, drawn on the Maryland National Bank, Annapolis, Maryland was made payable to Raphael G. Urciolo, Attorney but bore the notation "John J. Rogers and wife." It was deposited in the personal bank account of Raphael G. Urciolo and Florence E. Urciolo in the National Bank of Washington, in the District of Columbia, on June 21, 1965 and in due course was paid by the Maryland National Bank in Annapolis, Maryland on June 23, 1965. Rogers never received the check or its proceeds.

Rogers was not informed until 1968 of the fact of settlement; nor of the fact of the execution of a deed; nor of the fact that a mortgage to Joseph J. Urciolo and Chance had been executed and recorded. He was then so advised by new counsel. The purchase money mortgage was not assigned to Rogers until separate litigation compelled it.[5]

---

5. *Arban v. Rogers*, supra, p. 739.

In 1965 John J. Rogers was 66 years old. His formal schooling had ceased in the sixth grade. It is clear that he reposed trust and confidence in Raphael Urciolo as his representative and agent. Raphael Urciolo was a member of the Bar of the District of Columbia actively engaged in the real estate business. There was testimony (denied by appellant) that Raphael Urciolo had threatened to keep the property in active litigation "until Rogers died." There was also testimony that appellant falsely stated to Rogers (after discovery by the latter that the property had been deeded to Arban, et al) that Chance had not received any money from the settlement of the property in 1965.

The above recited evidence must be considered in the light of the circumstance that the course followed by appellant had removed any evidence of title in Rogers, legal or equitable. The deed and the mortgage upon their face evidenced ownership in persons other than Rogers.

Appellant thus states the questions here presented:

"1. Whether the Maryland courts had territorial jurisdiction to indict and punish for the alleged embezzlement of a check which had been received and appropriated by the accused outside the boundaries of Maryland.

2. Whether there was a fatal variance between the indictment's allegation of embezzlement of United States currency and the resting of the verdict on a finding of embezzlement of a private check.

3. Whether the evidence is insufficient to support a conviction for embezzlement of the check.

4. Whether the indictment was defective (a) for failing to allege an offense, (b) for failure to aver the ownership of the property allegedly embezzled."

### Jurisdiction

Appellant's contention that there was no receipt or appropriation in Maryland is factually overstated.

A permissible inference arises from the personal attendance of appellant at the settlement; from the letter from Gott to Raphael Urciolo, coupled with Exhibit 6c; and from the date and form of the check itself that appellant had designated Gott as his agent to deliver the check into his possession. While it is not clear from the testimony whether Urciolo received the check from Gott personally in Anne Arundel County or through the mail, in our view it is immaterial here which course produced delivery to the appellant.

In *Simmons v. State*, 165 Md. 155, 167 A. 60 a case involving a charge of obtaining money by false pretenses wherein the evidence showed that "the money did not pass from the possession of the bank to the actual possession of the traverser, the money of the bank was so situated that the bank could and did make a complete transfer of the money to the traverser without actual delivery to him." On those facts it was said at page 163 [63]:

> "The bank was made the innocent agent of the traverser to pay to the parties indicated for the traverser's use and benefit the several sums of money agreed to be paid by the bank, for the traverser. The passage of the title, possession and control of the money from the bank to the indicated third parties at the traverser's request, or in accordance with his written order, was an obtaining of the money by the traverser as fully and completely as if the physical delivery had been made to the traverser in person."

One of the cases cited in support of the principle announced in *Simmons, supra,* was *Commonwealth v. Wood,* 8 N. E. 432 (Massachusetts), wherein the Supreme Judicial Court of Massachusetts had thus declared and resolved a similar issue at page 434:

> [x] "The defendant asked the court to rule that, upon the evidence, 'the offense was not complete in this commonwealth, and, even if complete, defendant

could not be convicted in this county,' which ruling the court refused. It appears by the bill of exceptions that 'the government introduced evidence tending to prove the representations alleged at Berlin; that they were false, and known to be so by the defendant; and also that the purpose of the defendant in making them was as alleged in the indictment; and that, in consequence thereof, Peters was induced to send a cashier's draft for the amount named, of which a copy is inserted in the indictment, to the defendant, at New York, being directed so to do by a note written by defendant, and left at Peters' place of business in Boston.' Although the defendant received the money on the cashier's draft in New York or in Minneapolis, it cannot be doubted that the offense charged in the indictment was accomplished and completed at Berlin when Peters, at the request of the defendant, sent him the draft, whether he sent it by the hand of an agent of the defendant, or deposited it in the mail. The exceptions do not show how he sent it; but, if he sent it by a carrier or other agent of the defendant, the delivery to the agent was a delivery to the defendant. *Com. v. Taylor*, 105 Mass. 172. So, if he sent it by mail, when he deposited it in the post-office it passed out of his control into the control of the defendant, and the postmaster was the agent of the defendant to forward the letter to him. *Regina v. Jones*, 1 Eng. Law & Eq. 533; S.C. 4 Cox, Crim. Cas. 198."

*Carter v. State*, 85 S. E. 884 (Georgia) factually is similar to the subject case. There it was said at page 887:

"Furthermore, the defendant requested the cashier to send him the stock certificates. This general direction amounted to an instruction to the cashier to select any proper agency to convey the shares to him. When the cashier deposited the package with the stock certificates in the mail, he was acting

according to the president's instruction. Thus another agency of the president's choosing delivered, in Gilmer county, the bank's stock to the mails. Certainly some offense was committed in Gilmer county; and it would be absurd to say that a crime was committed in Gilmer county if there was no one criminally responsible for it. The reasoning of Judge Beardsley in People v. Adams, 3 Denio (N.Y.) 190, 45 Am. Dec. 468, on the liability of a person concocting a crime in one state, and consummating it in another by innocent agents acting under his authority, to be prosecuted therefor in the courts of the latter, is unanswerable. He said:

'For all civil purposes a person out of this state may act by procuration within its limits, and thus, although absent at the time, he may become subject to the state law. Rights may thus be acquired by the absent party, as he may also become civilly liable under the law of this state, for what is done here by his authorization and procurement. The individual remedy in such case is perfect; and, if the criminal law of the state is thus violated, why should not the absent offender be responsible criminally, when afterwards found within the state? In authorizing another to act for him, the principal so far voluntarily submits himself to the law of the place where the authorized act is to be performed. This is confessedly so for all civil purposes. If an act thus authorized results in wrong to an individual, his right to redress against the principal, though absent, is undoubted. As to the person injured, the local law was violated by the absent wrongdoer: and, if the act done was also a violation of the local criminal law, is the author and procurer of the deed guiltless? Does the law hold him to have been within its

jurisdiction so far as respects the civil remedy, but not for the purpose of punishment? I see no ground on which the distinction can be sustained. An absent party procures an act to be done within this state, and, so far as respects criminal or civil responsibility, I think he should not be allowed to say he is not amenable to the law. He clearly would be so if the act had been done by himself in person within the limits of the state, and it is precisely the same if done by an innocent agent.'

We think, both on reason and authority, this question should be answered in the affirmative."

Thus, under its facts, the subject case falls clearly within the decision in *Peddersen v. State*, 223 Md. 329, 335, 164 A. 2d 539, 543, wherein it was said:

"Since it is fundamental that an intent to appropriate money or property is a vital element of the crime of embezzlement, the courts are often faced with the difficulty of finding a clear showing of intent when there is no proof of an unequivocal act of appropriation within their jurisdiction. That problem was stated and succinctly dealt with in *People v. Brock, infra,* where it was said (at 70 P. 2d 214): 'Obviously the intent which accompanies the formation of a plan to do an act is inherently difficult to prove by direct evidence. The act itself together with the circumstances surrounding its execution must generally form the basis from which the intent may legitimately be inferred.'

In addition to the law writers, the cases in other jurisdictions have long supported the rule that it is not necessary for the actual act of appropriation to occur within the territorial jurisdiction of the court if the essential element of fraudulent intent can be shown to have been formed either in the county

where the property was received or in the county in which the property was possessed. Among these are *Brown v. State*, 4 S. W. 588 (Ct. App. Tex. 1887) [since the defendant may not have conceived the fraudulent intent to appropriate the money to his own use 'until the very moment when he denied having received it,' he was properly indicted in the jurisdiction where he denied its receipt]; *State v. Sullivan*, 21 So. 688 (La. 1896) [a defendant who conceived an intent to fraudulently appropriate jewelry in the place where it was received, and, in furtherance of that intention, took it to another place to dispose of it, may lawfully be indicted in the place where the property was received]; *People v. Goodrich*, 75 P. 796 (Cal. 1904) [the jury was warranted in finding that intent to embezzle a boat was formed in the place where the defendant had promised the owner he would deliver it by a certain date, and not in the place where he had disposed of the property]; *Woodward v. United States*, 38 D. C. App. 323 (1912) [the defendant having the money of his employer in his possession in the District of Columbia, where he had formed the intent to convert it to his own use, 'was all that was necessary to lay the venue' in the District, though the defendant had traveled through several jurisdictions until the money had been exhausted]; *Maynard v. State*, 170 S. E. 265 (Ga. 1933) ['If an employee * * * refuses to account for property or money, with fraudulent intent, in the county in which it was received, or, if in that county he conceives the intent to convert the property to his own use, and has possession with such intent, the offense of embezzlement is complete']; *People v. Brock*, 70 P. 2d 210 (Cal. 1937) ['(I)t is the place where the intent to embezzle is formed which is important in determining the question of jurisdiction in a prosecution for embezzlement']; *State v. Serkau*, 20 A. 2d 725 (Conn. 1941) [since an

embezzlement may extend over a considerable period of time and different acts may take place in several jurisdictions, it was reasonable for the trial court to 'conclude that there was a taking in Connecticut, with intent to embezzle, in view of the fact that the defendant told * * * (the victim) that he was taking the securities (to New York) for investigation, that he sold the bonds two days later and almost immediately used the proceeds to pay his personal bills']; and *Heughan v. State,* 61 S.E.2d 685 (Ga. 1950) [where property is received in one county and is thereafter fraudulently converted in another county, the jury would be authorized to conclude that intent to convert was formed in the county where the property was entrusted to him, and venue under such circumstance would properly be laid in that county].

In *Martel v. State,* 221 Md. 294, 157 A. 2d 437 (1960) where we had occasion to state at p. 299 that: 'In embezzlement, the rule is that proper venue is the county where the act of appropriation or conversion took place, or where the intent to embezzle was formed, or where the property was entrusted, or where the accused is under an obligation to account', though not necessary to the decision in that case, was an indication of our accord with the modern trend of text writers and the cases herein cited. It appears, however, that that part of the generalization concerning intent needs amplification. The authorities herein referred to clearly indicate that the essential element in embezzlement, as in numerous other criminal offenses, is that of intent, and that venue may be laid in any county in which the money or property was received with intent to embezzle, or in the county in which the money or property was possessed and the intent to embezzle was formed, *regardless of the fact that actual conversion may have taken place in another county or state. We*

*hold, therefore, that where there is evidence, as there was in this case, to show that the defendant had possession in a stated county of the money or property appropriated, and also evidence to support an inference that the fraudulent intent to embezzle had been formed in the same county, such evidence is sufficient to establish proper venue."* [Italics supplied; footnotes omitted.]

It is plain, accordingly, that the lower court had jurisdiction if the evidence showed that an intent to appropriate had been formed within the state. The trial judge found that it did.

There is a permissible, if not a compelling inference that appellant requested Gott to draw the check for $1788.53 to his order; it is crystal clear that appellant knew that Rogers — and no one but Rogers — was entitled to the proceeds of a fully consummated transaction; it is equally clear from the notation on the face of the check that its proceeds were intended for the use and benefit of Rogers. The words and actions of appellant both before and after settlement tend to show a fraudulent intent coexisting with actual or constructive possession of Rogers' funds within the State.

We said in *Waldrop v. State*, 12 Md. App. 371, 377, 278 A. 2d 619, 622:

"Guilt in embezzlement cases is almost always a matter of inference, *Couture v. State*, 7 Md. App. 269, 255 A. 2d 84, and if the rational inferences prove the crime was committed in Maryland, there is no error in trying appellant in Maryland."

The trial court concluded that this State had jurisdiction. We cannot say, in the light of the evidence presented, that its decision was clearly erroneous. Rule 1086.

Because jurisdiction was established by a showing of the coexistence of possession and fraudulent intent, it is unnecessary to deal here with the applicability of the "place to account" doctrine, nor is it necessary to decide whether jurisdiction would exist if the evidence showed only

formation of fraudulent intent within this State with possession and appropriation elsewhere.

*Variance*

Appellant suggests a fatal variance between the indictment allegation of embezzlement of currency of the total value of $7500.00 and the alleged proof of that embezzlement by a check for $1788.53. We find no meaningful variance.

In 26 Am. Jur. 2d "Embezzlement" it is said at page 597:

"Considerable latitude is allowed, however, in proving the amount and the particular money charged to have been embezzled. Thus, it is sufficient for the state to prove the embezzlement of any part of the amount alleged to have been embezzled, and an indictment charging conversion of money is sustained by proof of conversion of bank notes, promissory notes, or by the drawing of checks."

That logic and reason support this stated principle is excellently expounded in *Christison v. State*, 96 So. 2d 701 (Alabama), wherein it was said at page 703:

"The defendant argues in brief that an indictment charging the embezzlement of money is not sustained by proof of the embezzlement of checks only and that 'a careful reading of the record will indicate that throughout the trial, there was absolutely no evidence introduced to prove that the defendant embezzled or converted to her own use any United States Currency, but to the contrary, the entire body of the evidence dealt with the alleged forgery and/or embezzlement of certain bank checks.'

We are of the opinion the appellant's contention is without merit. In the words of Chief Justice Gardner in Simmons v. State, 242 Ala. 105, 4 So. 2d

905, 906, the check was 'merely the instrumentality through which the defendant received his money, and to hold a fatal variance in such a case would run counter to common sense and tend to frustrate the practical end, for the accomplishment of which courts were established.' The court also said:

'It would be carrying technicality to a most regrettable extreme to hold that the proof of the mere instrumentality of obtaining the money constitutes a variance with the charge of obtaining the money itself, when the same evidence discloses the fact that the money was so obtained.' "

To the same effect are cases in a number of other jurisdictions.[6]

Appellant cites *Benjamin v. State*, 9 Md. App. 373, 264 A. 2d 490, as supporting his variance contention. We find it inapposite. In *Benjamin*, the accused, charged with obtaining $2000.00 current money by false pretenses, was shown only to have obtained a bail bond to effect his temporary release from confinement. In the subject case the check was the device through which the money of Rogers was appropriated to the appellant's use.

### Sufficiency of the Evidence

Appellant's contention that no agency relationship between appellant and Rogers existed, is demolished by the following testimony of the latter:

"I had turned all my business affairs over to Mr. Urciolo, Raphael Urciolo. * * * Mr. Urciolo was supposed to take care of the sale of it."

Appellant's contention that the monies represented by the

---

6. *Cooper v. U.S.*, 30 F. 2d 567, 568 [CADC].
*People v. Crane*, 168 P. 377, 380 [California].
*People v. Ervin*, 174 N. E. 529, 530 [Illinois].
*Hicks v. State*, 23 P. 2d 219 [Oklahoma].
*McGuire v. People*, 262 P. 1015 [Colorado].
*Young v. State*, 183 N. E. 100, 102 [Indiana].

check for $1788.53 was not Rogers' property is destroyed by the notation on the face of the check that permits, if it does not compel, the contrary conclusion. There also was other evidence that Rogers equitably was entitled to the proceeds of a sale of the property.

Appellant's contention that criminal intent was not shown has been sufficiently demonstrated to be without merit in our discussion of *Jurisdiction* herein, *supra*.

### The Indictment

Appellant contends that the indictment is fatally defective because of a failure to allege an offense, in that: (a) the appellant was not charged as a "cashier, agent, clerk or officer," and (b) the ownership of the embezzled property is not declared. He cites two cases in which an indictment was held to be invalid because of failure to allege an essential element of an offense, namely: *Baker v. State*, 6 Md. App. 148, 250 A. 2d 677, and *Armacost v. State*, 133 Md. 289, 105 A. 147. He also cites *Gordon v. State*, 5 Md. App. 291, 246 A. 2d 623, and *Loker v. State*, 2 Md. App. 1, 233 A. 2d 342, as confirmatory of those decisions. A cursory examination of *Baker, Armacost, Loker* and *Gordon*, all *supra*, would seem to support the contention here made by the appellant. Careful analysis proves otherwise.

The validity of the legal principle redeclared in *Baker* — that attacks upon indictments failing to charge an offense are of jurisdictional dimension and require appellate review whether or not the issue was raised below — is beyond doubt. It is plain, moreover, that the rule declared in *Armacost, supra*, is still viable in its proper setting. It is true also that in dicta by this Court and by the Court of Appeals in *Loker v. State*, 2 Md. App. 1, 24, 233 A. 2d 342, 357; 250 Md. 677, 683, 245 A. 2d 814, 818 (an embezzlement case) the respective Courts cited *State v. Tracey*, 73 Md. 447, 21 A. 366, which had stated unequivocally that indictments for embezzlement fell within the rule, and required an allegation of ownership. The decisions of the two Courts in *Loker, supra*, however, were not directed to an issue contesting the *form* of the indictment. Rather, the issue

involved the *proof* required to sustain the charge of embezzlement. In the subject case, the *form* of the indictment is at issue and must be considered in the light of legislative passage of Chap. 93 of the Acts of 1945 (now codified as § 130 of Article 27). The form of the indictment there authorized for use in embezzlement cases reads as follows:

> "In any indictment or warrant for embezzlement, it shall be sufficient to use a formula substantially to the following effect: 'That A-B on the _____ day of _____, 19__, in the County (City) aforesaid did feloniously embezzle from C-D the sum of _____ Dollars current money (or an enumeration of articles embezzled as the case may be), in violation of Article 27, Section (here state section violated), of the Annotated Code of Maryland; contrary to the form of the Act of Assembly in such case made and provided and against the peace, government and dignity of the State.' "

The title of the Act declared that its purpose was to provide "for a short form of indictment * * * for the crime of embezzlement." The indictment in the subject case was drafted in the precise language of the statute.

In the course of the opinion in *Tracey, supra,* the Court of Appeals said at page 449 [367]:

> "In 2 Russel on Crimes, 464, that learned author says: *'Except as sec. 71, of the 24 Vict. ch. 96, may have otherwise provided* it seems that the indictment ought to contain all the requisites of an indictment for larceny at common law.' " [Italics supplied]

That language makes plain that, in England, shortened statutory forms of indictments are valid. The same rule applies in this country. *Wharton's Criminal Procedure* (Anderson Edition) Vol. 4, Section 1759, it is said:

> "The modern policy of the courts to relax or

disregard the highly technical and artificial rules of the early common law in framing and construing indictments has been adopted by many statutes enacted in substantially all jurisdictions. The power of the legislatures, acting within constitutional limitations, to dispense with artificialities, technicalities, or old forms in criminal pleadings and to substitute short, simplified forms for the old is settled. Under these simplifying provisions it is the general rule that an information or indictment is sufficient if the act or omission charged as the offense is clearly and distinctly set forth in ordinary and concise language, without repetition or great specification of particulars, and in such manner as to enable a person of common understanding to know what is intended, and to enable the court to pronounce judgment on a conviction, according to the right of the case, even though matters of an evidentiary nature are omitted therefrom, especially when they are of such nature as may be supplied by a bill of particulars on application therefor seasonably made."

Maryland decisions support that rule. Illustrative of such cases and excellently expositive of the sound ground upon which the doctrine is predicated is *Neusbaum v. State,* 156 Md. 149, 143 A. 872, in which it was said at page 155 [875]:

"At common law it was essential that the indictment should show the name of the person charged, the name of the person killed, the jurisdiction within which and the time at which the homicide occurred, that it was felonious and such of the facts and circumstances incident to the crime as were reasonably necessary to identify it, and to enable the court to see whether a crime had been committed as charged. *Wharton Cr. Proc.,* ch. 16. Measured by that standard, the indictment in this case would unquestionably be defective, but that is

not the question involved here, which is, whether the indictment in this case conforms to the statute, and (2) whether the statute itself is valid. If the form prescribed by the statute is sufficient to inform the defendant of the 'accusation against him,' it does not violate article 21 of the Bill of Rights, and consequently is not repugnant to the 'due process' clause of the Fourteenth Amendment of the Federal Constitution."

The Court added at page 157 [876]:

"And it may be added that, wherever the precise question now under consideration has arisen, the right of the legislature to prescribe a short form of indictment such as that provided by Code, art. 27, sec. 563, has been upheld, sometimes on the ground that the defendant's right to have the particulars upon demand protected him against injury, and at others on the ground that the manner and means of death were not elements of the crime of manslaughter, and that allegations as to them were not necessary to inform the prisoner of the accusation against him.

Statutes similar in character to that now under consideration have been enacted in many of the American states as well as in England, in an effort to escape the excessive formalism of the common law, which formerly made the conviction or acquittal of one charged with crime so often turn upon some technical quibble rather than upon the guilt or innocence of the accused, and the uniform tendency of the courts has been to uphold them wherever that could be done without infringing the right of the accused to the protection of such constitutional guarantees, as the right to be informed of the charge against him."

That the offense of embezzlement requires the showing of an agency relationship of the accused and an appropriation

of the funds of his principal is clear from the decided cases. *Tabbs v. State,* 10 Md. App. 177, 181, 268 A. 2d 598, and cases therein cited. The legislature doubtless was aware of this rule of law. Thus, the indictment language that the appellant "did feloniously embezzle from John Rogers" — as authorized by statute — was intended by the legislature to encompass, and does in fact encompass, by necessary implication, allegations of those essential elements of the offense.

We hold, accordingly, that the form prescribed by the statute sufficiently informed the appellant of the accusation against him; and is not in violation of Article 21 of the Declaration of Rights, nor repugnant to the "due process" clause of the Fourteenth Amendment.

*Judgment affirmed.*