## COMMONWEA*TH* vs. THOMAS HAYS.

*Fraudulent conversion to one's own use of money paid to him by mistake is not embezzlement, within the St. of 1857, c. 233.*

INDICTMENT on *St.* 1857, *c.* 233, which declares that " if any · person, to whom any money, goods or other property, which may be the subject of larceny, shall have been delivered, shall embezzle, or fraudulently convert to his own use, or shall secrete, with intent to embezzle or fraudulently convert to his own use, such money, goods, or property, or any part thereof, he shall be deemed, by so doing, to have committed the crime of simple larceny." The indictment contained two counts, one for embezzlement, and one for simple larceny.

At the trial in the court of common pleas in Middlesex, at October term 1858, before *Aiken,* J., Amos Stone, called as a witness by the Commonwealth, testified as follows : " I am treasurer of the Charlestown Five Cent Savings Bank. On the 17th day of October 1857, the defendant came into the bank, and asked to draw his deposit, and presented his deposit book. I took his book, balanced it, and handed it back to him. It was for one hundred and thirty dollars in one item. I then counted out to him two hundred and thirty dollars, and said, ' There are two hundred and thirty dollars.' The defendant took the money to the end of the counter, and counted it, and then left the room. Soon after the defendant had left, I discovered that I had paid him one hundred dollars too much. After the close of bank hours I went in search of the defendant, and told him that I had paid him one hundred dollars too much, and asked him to adjust the matter. The defendant asked me how I knew it. He asked me if I could read. I said ' Yes.' He then showed me his book, and said, ' What does that say ? ' I took it, and read in it one hundred and thirty dollars. The defendant then said, ' That is what I got.' He exhibited two fifties, two tens, and a ten dollar gold piece, and said, ' That is what I got.' I then said to him, ' Do you say that is all and

precisely what I gave you?' He replied, ' That is what I got.'
I then said to him, ' I can prove that you got two hundred and
thirty dollars.' He replied, ' That is what I want; if you can
prove it, you will get it; otherwise, you wont.' I intended to
pay the defendant the sum of two hundred and thirty dollars
and did so pay him. I then supposed that the book called for
two hundred and thirty dollars. Books are kept at the bank
containing an account with depositors, wherein all sums depos-
ited are credited to them, and all sums paid out are charged to
them."

The defendant asked the court to instruct the jury that the
above facts did not establish such a delivery or embezzlement as
subjected the defendant to a prosecution under the *St.* of 1857,
*c.* 233, and did not constitute the crime of larceny.

The court refused so to instruct the jury; and instructed
them " that if the sum of two hundred and thirty dollars was so
delivered to the defendant, as testified, and one hundred dollars,
parcel of the same, was so delivered by mistake of the treasurer,
as testified, and the defendant knew that it was so delivered by
mistake, and knew he was not entitled to it, and afterwards the
money so delivered by mistake was demanded of him by the
treasurer, and the defendant, having such knowledge, did fraud-
ulently, and with a felonious intent to deprive the bank of the
money, convert the same to his own use, he would be liable
under this indictment." The jury returned a verdict of guilty,
and the defendant alleged exceptions.

*N. St. J. Green,* for the defendant.

*S. H. Phillips,* (Attorney General,) for the Commonwealth.

BIGELOW, J. The statute under which this indictment is
found is certainly expressed in very general terms, which leave
room for doubt as to its true construction. But interpreting its
language according to the subject matter to which it relates, and
in the light of the existing state of the law, which the statute
was intended to alter and enlarge, we think its true meaning
can be readily ascertained.

The statutes relating to embezzlement, both in this country
and in England, had their origin in a design to supply a defect

which was found to exist in the criminal law. By reason of nice and subtle distinctions, which the courts of law had recognized and sanctioned, it was difficult to reach and punish the fraudulent taking and appropriation of money and chattels by persons exercising certain trades and occupations, by virtue of which they held a relation of confidence or trust towards their employers or principals, and thereby became possessed of their property. In such cases the moral guilt was the same as if the offender had been guilty of an actual felonious taking; but in many cases he could not be convicted of larceny, because the property which had been fraudulently converted was lawfully in his possession by virtue of his employment, and there was not that technical taking or asportation which is essential to the proof of the crime of larceny. *The King* v. *Bazeley*, 2 Leach, (4th ed.) 835. 2 East P. C. 568.

The statutes relating to embezzlement were intended to embrace this class of offences; and it may be said generally that they do not apply to cases where the element of a breach of trust or confidence in the fraudulent conversion of money or chattels is not shown to exist. This is the distinguishing feature of the provisions in the Rev. Sts. *c.* 126, §§ 27–30, creating and punishing the crime of embezzlement, which carefully enumerate the classes of persons that may be subject to the penalties therein provided. Those provisions have been strictly construed, and the operation of the statute has been carefully confined to persons having in their possession, by virtue of their occupation or employment, the money or property of another, which has been fraudulently converted in violation of a trust reposed in them. *Commonwealth* v. *Stearns*, 2 Met. 343. *Commonwealth* v. *Libbey*, 11 Met. 64. *Commonwealth* v. *Williams* 3 Gray, 461. In the last named case it was held, that a person was not guilty of embezzlement, under Rev. Sts. *c.* 126, § 30 who had converted to his own use money which had been delivered to him by another for safe keeping.

The *St.* of 1857, *c.* 233, was probably enacted to supply the defect which was shown to exist in the criminal law by this decision, and was intended to embrace cases where property had

been designedly·delivered to a person as a bailee or keeper, and had been fraudulently converted by him. But in this class of cases there exists the element of a trust or confidence reposed in a person by reason of the delivery of property to him, which he voluntarily takes for safe keeping, and which trust or confidence he has violated by the wrongful conversion of the property. Beyond this the statute was not intended to go. Where money paid or property delivered through mistake has been misappropriated or converted by the party receiving it, there is no breach of a trust or violation of a confidence intentionally reposed by one party and voluntarily assumed by the other. The moral turpitude is therefore not so great as in those cases usually comprehended within the offence of embezzlement, and we cannot think that the legislature intended to place them on the same footing. We are therefore of opinion that the facts proved in this case did not bring it within the statute, and that the defendant was wrongly convicted. *Exceptions sustained*