# URCIOLO v. STATE OF MARYLAND

[No. 266, September Term, 1973.]

*Decided October 10, 1974.*

608

The cause was argued before MURPHY, C. J., and SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and O'DONNELL, JJ.

*Joseph Forer* for appellant.

*Clarence W. Sharp, Assistant Attorney General,* with whom was *Francis B. Burch, Attorney General,* on the brief, for appellee.

O'DONNELL, J., delivered the opinion of the Court.

The appellant, Raphael Urciolo, an attorney in the District of Columbia, was charged in two indictments returned in 1970 by a grand jury in Anne Arundel County;[1] upon

---

1. In Indictment No. 5139 the first count charged him with larceny after trust of $7,500, the second count charged grand larceny of the same money, the third count charged its embezzlement and the fourth count charged him with obtaining the $7,500 by false pretenses. Each of the counts charged that the offenses occurred between March 1 and June 30, 1965. Indictment No. 5140 charged appellant and Joseph J. Urciolo (his brother) (in four counts) with conspiring between April 1, 1964 and June 30, 1965, to commit the same four substantive offenses. Prior to trial the counts charging false pretenses and conspiracy to commit false pretenses were *nol prossed.* Motions for judgment of acquittal were granted on all the remaining conspiracy counts, as well as on the substantive charges of larceny after trust and grand larceny. The conspiracy indictment against Joseph Urciolo was not called for trial.

removal of the cases to the Circuit Court for Howard County he was convicted in a nonjury trial (by Mayfield, J.) of having feloniously embezzled from John Rogers currency in the amount of $1,788.53 in violation of Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 129.[2]

His conviction arose out of the conversion of the partial proceeds from a real estate settlement for a tract of land in Anne Arundel County. We will not here attempt to set out fully the labyrinthian, episodic, myriad of facts concerning the history of the property, or the appellant's complete involvement therewith, but will content ourselves with recounting only so much of the background data as is directly relevant to the issues now before us.[3]

Following a tax sale in 1932, John J. Rogers and his wife acquired a 48 acre tract of land from the County Commissioners of Anne Arundel County; in September 1963 an option to purchase the property, expiring on March 24, 1965, was granted to Arthur J. McGinnis. In 1964 Helen Clarke, a "strawman," on behalf of Thomas E. Chance, who had obtained a deed from the heirs of the record owner at the time of the tax sale, filed suit against the Rogerses in the Circuit Court for Anne Arundel County to void the tax sale. The Rogerses retained the appellant to represent them in those equity proceedings and Winson D. Gott, Jr., an Annapolis attorney specializing in realty law, became co-counsel, since the appellant was not a licensed Maryland practitioner.

With misgivings about the validity of the tax deed and anticipating a lack of success in their defense of establishing adverse possession, the Rogerses, upon the advice of the appellant and before the resolution of the equity proceedings (which voided the tax sale deed), entered into an agreement with Helen Clarke in 1964 which provided that upon the

---

2. The count on which he was convicted charged that the appellant [on the said day, in the said year, at the County aforesaid] "did feloniously embezzle from John Rogers, miscellaneous United States Currency of the total value of Seven thousand five hundred dollars, in violation of Article 27, Section 129 of the Annotated Code of Maryland. . . ."

3. For a full factual account *see* McGinnis v. Chance, 247 Md. 393, 231 A. 2d 63 (1967); McGinnis v. Rogers, 262 Md. 710, 279 A. 2d 459 (1971). *See also* Arban v. Rogers, 262 Md. 738, 279 A. 2d 457 (1971).

enrollment of the equity decree the Rogerses and Clarke would jointly convey the property to two trustees, Joseph J. Urciolo (appellant's brother), who would represent the Rogerses' interest, and Thomas E. Chance, to represent the Clarke (and his own) interests. Because of the outstanding option in favor of McGinnis these "trustees" were to hold title to the property without the deed reflecting their fiduciary status and were to sell it as they might be directed by the beneficiaries, but not before the expiration of McGinnis' option. Pursuant to that agreement Mr. and Mrs. Rogers and Helen Clarke, on March 24, 1965, deeded the property to Joseph Urciolo and Thomas Chance as joint tenants; they promptly entered into a contract for the sale of the property to one Frank Calcara and agreed that the Urciolo Realty Company (although not a licensed realtor in Maryland) would receive a ten percent sales commission. On May 26, 1965 the property was conveyed to a "combine" or partnership comprised of John V. Arban, Pascal Della Badia (two clients of Urciolo) and Florence E. Urciolo (appellant's wife), organized by the appellant, for a consideration of $94,600, as a result of the assignment by Calcara to the syndicate of his contract to purchase.

In April 1965, because of Mrs. Rogers' deteriorating health, the Rogerses sold his business and their dwelling and departed for Arizona, ignorant of the contract of sale and its assignment. At the time of their departure the Rogerses entrusted the appellant with all their business affairs concerning the property. (Mrs. Rogers died in Arizona in July 1965.)

Although the syndicate had not raised all the cash required, it appeared that Chance was due to leave the State and settlement was held in Annapolis on May 25 or 26, 1965, at the offices of the Capitol Savings and Loan Association with Winson D. Gott, Jr., acting as "settlement officer." Three sparse memoranda evidence the settlement; one prepared by Gott in advance, dated May 24, set forth the purchase price at $94,600, with $23,000 payable in cash at the settlement ($1,000 having been reportedly paid as a deposit) with the balance, in the amount of $70,600, to be

secured by a purchase money mortgage from the partnership. The total cash computed as due from the partners (including stamps, recording, title examinations, etc.) totalled $23,819.84. Another memorandum, dated merely "May 1965" [referred to as exhibit 6b] indicated the same purchase price and mortgage, but included deductions for a broker's commission to Urciolo Realty ($9,460) and "one-half deed stamps," leaving $14,383.25, one-half of which ($7,191.63) was allocated as payable to each of the nominal grantors, Joseph J. Urciolo and Thomas E. Chance. The half allocated to Joseph J. Urciolo (as "trustee" for Rogers) was debited with a trustee's commission to Joseph J. Urciolo ($2,365) and attorneys fees to Urciolo and Urciolo ($600) and Gott ($500) for professional services rendered in the case of *Clarke v. Rogers,* showing a net balance for Rogers' share at $3,726.62. Gott testified that all of the amounts relating to attorneys' and brokers' fees and commissions appearing on the memoranda were supplied him by the appellant at the time of settlement.

The appellant came to the settlement as a representative of the purchasing partners as well as to look out for the Rogerses' interest; he brought, from members of the syndicate, checks totalling only $10,300, announcing that this should be sufficient to pay Chance's portion of the cash. He delivered the checks to Gott as "settlement officer," who, in turn, handed them over to Thomas Chance. Chance deposited the checks and in turn gave Gott a check in the amount of $3,108.37, representing the excess over the $7,191.63 which had been computed as Chance's share of the cash paid at settlement. The deed, as well as the mortgage, both dated May 26, 1965, were delivered at settlement and subsequently recorded.

By letter dated June 10, 1965, Gott forwarded to the appellant, at his District of Columbia office, the deed which had been released from record and advised that he "will send the balance of funds on hand and title policy."

The third memorandum, dated June 12, 1965, by Gott [referred to as exhibit 6c] deducted $7,191.63, the amount paid Chance from the total of $10,300 brought to the

settlement by Urciolo, and from the balance of $3,108.37, Gott deducted $500 as payment of his fee in the tax sale litigation, and $819.84 as settlement costs, listing as "[b]alance on hand — check herewith . . ." $1,788.53. On the same date Gott drew a check on his trustee account in that amount, payable to "Raphael G. Urciolo, Attorney," with a notation thereon, "John J. Rogers & wife." [4]

Raphael Urciolo received Gott's check, endorsed it and deposited it in the District of Columbia on June 21, 1965, in a personal account owned by him and his wife. In due course the drawee bank, Maryland National Bank in Annapolis, paid it on June 23, 1965.

Gott could not recall whether the check payable to the appellant had been mailed to him or had been delivered to him in person; his letter of June 10 advised that it would be sent to the appellant in Washington, D. C., and the trial court assumed it had been mailed.

John J. Rogers never received any of the proceeds of the check from the appellant; he first learned of the sale and the settlement while a resident of Arizona when the appellant informed him that the property had been sold for $90,000. It was not until his return to Anne Arundel County, in about March, 1966, after suit had been filed against him by McGinnis, that he discovered the actual purchase price and concluded that he "had not been treated fairly." At about the time of the trial of the proceedings in *McGinnis v. Rogers*, the appellant offered to pay Rogers $3,400, which Rogers refused.[5]

---

4. The record fails to disclose why that check was made payable to the appellant "as Attorney," since his brother, Joseph J. Urciolo, who was acting as the undisclosed "trustee" for the Rogerses' interest, was one of the grantors in the deed and one of the mortgagees. Gott testified that if enough cash had been paid for a complete settlement he would have sent Rogerses' share to Joseph J. Urciolo.

5. McGinnis v. Rogers, *supra*, n. 3. In those proceedings this Court held that the appellant "as settlement attorney" should have paid Rogers $16,151.62, or held that amount in trust for him. This was computed as comprising his net share of the purported deposit, in the amount of $7,191.62 (the same amount received by Chance), plus $9,460, the improperly charged real estate commissions to Urciolo Realty, less the $500 fee paid to Gott (Chance, at the time of decree having assigned all his interest to Rogers). The decree was entered against the brothers Urciolo.

The trial court in its memorandum, after noting that lack of jurisdiction in the court was one of the grounds raised by the defendant in his motion for judgment of acquittal, and citing *Peddersen v. State,* 223 Md. 329, 164 A. 2d 539 (1960); *Martel v. State,* 221 Md. 294, 157 A. 2d 437, *cert. denied,* 363 U. S. 849 (1960); *Bowen v. State,* 206 Md. 368, 111 A. 2d 844 (1955); and *Waldrop v. State,* 12 Md. App. 371, 278 A. 2d 619, *cert. denied,* 263 Md. 722 (1971), concluded:

> "Unquestionably, the Waldrop Court reviewed the law in embezzlement cases recognizing the four different criteria announced in *Martel,* and also recognizing the revisions stated in *Peddersen,* and stated that in *Peddersen* the Court had concluded that *since the essential element in embezzlement was intent,* the venue could be laid in any county in which: (1) the money or property was received with intent to embezzle, or (2) in the county in which the money or property was possessed and the intent to embezzle was formed, regardless of the fact that actual conversion may have taken place in another county or state.
>
> In the instant case, it is clear that the defendant attended the offices of Mr. Gott in Anne Arundel County with a sum of money with which to effect a settlement on behalf of Mr. Rogers. He was at that time acting for and in behalf of Mr. Rogers. While it may be true that he received some funds belonging to Rogers by mail from Mr. Gott, and thereafter deposited that sum in an account in the District of Columbia, it is the view of this Court that *at the time the defendant appeared with the money in Anne Arundel County he had then formed or continued to retain a criminal intent to embezzle funds of his principal.* In the view of this Court there is ample evidence to support an inference that such an intent existed in Anne Arundel County, Maryland." (Emphasis supplied.)

The Court of Special Appeals affirmed the appellant's

conviction and the judgment entered thereon in *Urciolo v. State*, 19 Md. App. 123, 310 A. 2d 165 (1973).[6] In concluding that the decision of the trial court that the State of Maryland had jurisdiction over the offense was "not clearly erroneous," Judge Menchine, for the court, stated:

> "A permissible inference arises from the personal attendance of appellant at the settlement; from the letter from Gott to Raphael Urciolo, coupled with Exhibit 6c; and from the date and form of the check itself *that appellant had designated Gott as his agent to deliver the check into his possession.* While it is not clear from the testimony whether Urciolo received the check from Gott personally in Anne Arundel County or through the mail, in our view it is immaterial here which course produced delivery to the appellant." (Emphasis supplied.) 19 Md. App. at 130, 310 A. 2d at 169.

After quoting from *Peddersen v. State, supra; Simmons v. State*, 165 Md. 155, 167 A. 60 (1933); *Carter v. State*, 143 Ga. 632, 85 S. E. 884 (1915); and *Commonwealth v. Wood*, 142 Mass. 459, 8 N. E. 432 (1886), he reasoned for the court:

> "It is plain, accordingly, that the lower court had jurisdiction *if the evidence showed that an intent to appropriate had been formed within the state.* The trial judge found that it did.
>
> There is a permissible, if not a compelling inference that appellant requested Gott to draw the check for $1788.53 to his order; it is crystal clear that appellant knew that Rogers — and no one but Rogers — was entitled to the proceeds of a fully consummated transaction; it is equally clear from the notation on the face of the check that its proceeds were intended for the use and benefit of

---

6. A sentence of one year in jail was suspended and restitution in the amount of $1,788.53 was ordered. (It would appear that the amount ordered in restitution was included in the monetary decree entered in McGinnis v. Rogers, *supra*, n. 3.) *See* n. 5, *supra*.

Rogers. The words and actions of appellant both before and after settlement tend to show a fraudulent *intent coexisting with actual or constructive possession of Rogers' funds within the State.*

We said in *Waldrop v. State,* 12 Md. App. 371, 377, 278 A. 2d 619, 622:

'Guilt in embezzlement cases is almost always a matter of inference, *Couture v. State,* 7 Md. App. 269, 255 A. 2d 84, and if the rational inferences prove the crime was committed in Maryland, there is no error in trying appellant in Maryland.'

The trial court concluded that this State had jurisdiction. We cannot say, in the light of the evidence presented, that its decision was clearly erroneous. Rule 1086.

Because jurisdiction was established by a showing of the *coexistence of possession and fraudulent intent,* it is unnecessary to deal here with the applicability of the 'place to account' doctrine, nor is it necessary to decide whether jurisdiction would exist if the evidence showed only formation of fraudulent intent within this State with possession and appropriation elsewhere." (Emphasis supplied.) 19 Md. App. at 136-37, 310 A. 2d at 172-73.

The Court of Special Appeals, upon the authority of the holdings in *Cooper v. United States,* 30 F. 2d 567 (D.C. Cir. 1929); *Christison v. State,* 273 Ala. 1, 142 So. 2d 663 (1960); *People v. Crane,* 34 Cal. App. 599, 168 P. 377 (1917); *McGuire v. People,* 83 Colo. 154, 262 P. 1015 (1928); *People v. Ervin,* 342 Ill. 421, 174 N. E. 529 (1930); *Young v. State,* 204 Ind. 331, 183 N. E. 100 (1932); *Hicks v. State,* 54 Okla. Crim. 431, 23 P. 2d 219 (1933); and 26 Am.Jur.2d *Embezzlement* § 43 (1966), rejected the appellant's contention that there was a fatal variance.

We granted the writ of certiorari limited to two questions:

(a) whether the Maryland courts possessed territorial jurisdiction over the offense of embezzlement for which the appellant was convicted, and (b) whether there was a fatal variance between the allegations in the indictment of embezzlement of $7,500 United States currency and the proof which established an embezzlement by a check for $1,788.53.

# I

## *JURISDICTION*

The term "jurisdiction" as applied to criminal courts means the power to inquire into the facts, to apply the law and to declare the punishment for an offense in a regular course of judicial proceedings. *See* 22 C.J.S. *Criminal Law* § 107 (1961).

In *Bowen v. State*, 206 Md. 368, 111 A. 2d 844 (1955), this Court found a want of jurisdiction over the criminal acts by the appellant. Bowen was the president of Security Title and Investment Corporation of Bethesda (Security). A settlement was held at that company's office in connection with the purchase of a home. The defendant was not present at the settlement; it was handled by his secretary, the company's only other employee. The purchasers of the property had instructed a building and loan association from which they had borrowed $6,983 on a mortgage to transmit the mortgage check to Security; they had also instructed the Lawyer's Title Insurance Corporation to send a $10,670 check, representing the proceeds to them from the settlement for their former home, to Security. At settlement they delivered to Security their personal check in the amount of $1,026. From these several settlement checks Security was to pay-off a $12,500 open mortgage which the seller of the subject property owed to another building and loan association. All the checks which came into Security's possession were deposited in a District of Columbia bank, were there paid, and all withdrawals from that account were made in the District of Columbia.

About six months after settlement it was learned that

Security had not discharged the existing mortgage; investigation revealed that Security then had only about $1,500 in its bank account; and the insurance premium for the property, also collected from the purchasers at the time of settlement had not been paid.

The trial court convicted Bowen of both larceny after trust *and* embezzlement. In reversing both convictions on the ground of a lack of jurisdiction, this Court, speaking through Judge Collins, stated:

"The essential element in the crime of larceny after trust is the conversion. Code, 1951, Article 27, Section 420, *supra; Hochheimer on Criminal Law,* (2d Ed.), Section 365, page 402.

The State in its brief says: 'It is the general rule that the proper venue for embezzlement is the county where the act of appropriation or conversion took place.' However, it further contends that there was a fair inference that, if a conversion took place with fraudulent intent, such intent was conceived in Montgomery County and that *where the intent to embezzle is formed determines the jurisdiction in a prosecution for embezzlement.* It relies on *People v. Baker,* 64 Cal. App. 336, 221 P. 654 [1923], and *People v. Brock,* 21 Cal. App. 2d 601, 70 P. 2d 210 [1937]. Assuming, without deciding and *we do not here so decide,* that *the proper jurisdiction in a prosecution for embezzlement is that in which the intent to embezzle is formed,* there is not sufficient evidence here that there was any intent on the part of either Security or appellant to embezzle the money when the checks were received at Security's Bethesda office in Montgomery County, Maryland. The evidence here shows without contradiction that when the checks were received there were ample funds of Security in the Security Bank in Washington to pay off the trust in the amount of $12,500.00." (Emphasis supplied.) 206 Md. at 375-76, 111 A. 2d at 847.

He continued:

"The State also claims that in cases of indictment for embezzlement jurisdiction is properly laid in the county *where the accused was under obligation to account.* Among cases relied on are the following: *Kossakowski v. People,* 177 Ill. 563, 53 N. E. 115; *People v. Davis,* 269 Ill. 256, 110 N. E. 9; *Hopkins v. State,* 52 Fla. 39, 42 So. 52; *Cole v. State,* (Ala.), 67 So. 2d 64. Assuming, without deciding, *and we do not so decide,* that this is a true rule, the person to whom appellant or Security were supposed to account was Perpetual. The office of this corporation is located at Eleventh and E Streets, N.W., Washington, D.C. Therefore, the accounting was to be made in the District of Columbia and not in Maryland." (Emphasis supplied.) 206 Md. at 377, 111 A. 2d at 848.

For the Court Judge Collins further stated:

"The State further claims that prosecution for embezzlement is properly instituted in the jurisdiction *where the money was received,* even though the money was later deposited in a bank located in another jurisdiction. It relies on the case of *Denmark v. State,* (Ga.), 161 S. E. 286. . . . The Court of Appeals of Georgia there held that the criminal intent to convert money is presumed to have been formed *in the county wherein the corporated officer obtained possession thereof.* We have hereinbefore found in the instant case that there was not sufficient evidence to show any intent to convert the money at the time the checks were received in Bethesda, Maryland." (Emphasis supplied.) 206 Md. at 377-78, 111 A. 2d at 848.

After rejecting — upon the facts of the case — the application of these three bases for conferring jurisdiction, and without deciding their validity, Judge Collins quoted

with approval from 2 F. Wharton, Criminal Law § 1309 (12th ed. 1932), that: " 'Some act of conversion or appropriation by the bailee or carrier must be alleged and proved to have taken place within the jurisdiction of the court.' " [7] After quoting with approval the holdings by the Court of Appeals of Kentucky in *Hylton v. Commonwealth,* 29 Ky.L.Rptr. 64, 91 S.W. 696 (1906), as follows:

> " 'The offense was committed at the time when and place where appellant converted this money to his own use; and, in the absence of any evidence showing a conversion in Pike County, Ky., it is fair to presume that the conversion took place in the state of Virginia when and at the times appellant drew from the bank the money deposited there to his credit, with the purpose of not investing it in timber in Pike County, but of appropriating it to his own use; and as the crime charged is proven to have been committed in the state of Virginia, the courts of that state alone have jurisdiction of prosecutions against the perpetrator of the offense. The courts of this state cannot take cognizance of crime committed against the laws of a neighboring state. The crime of conversion under this statute is a single offense complete in itself, when the fraudulent conversion takes place.' " 206 Md. at 378, 111 A. 2d at 848.[8]

he concluded that: "In the instant case the checks were deposited in the District of Columbia, were paid in the District of Columbia, and the money was withdrawn in the District of Columbia. We are, therefore, of opinion that

---

7. In support of this statement the author cited Larkin v. People, 61 Barb. 226 (N. Y. 1871).

8. Other cases cited by the Court as holding generally to the same effect were: State v. Owen, 119 Ore. 15, 244 P. 516 (1926); State v. Moore, 189 Wash. 680, 66 P. 2d 836 (1937); Hatfield v. Guay, 87 F. 2d 358 (1st Cir. 1937); Henderson v. State, 129 Ala. 104, 29 So. 799 (1901); State v. Nahoum, 172 La. 83, 133 So. 370 (1931); State v. Bacon, 170 Mo. 161, 70 S. W. 473 (1902); State v. Mispagel, 207 Mo. 557, 106 S. W. 513 (1907); State v. Blackley, 138 N. C. 620, 50 S. E. 310 (1905).

the Circuit Court for Montgomery County had no jurisdiction in this case." 206 Md. at 379, 111 A. 2d at 849.

Following *Bowen,* this Court, in *Martel v. State,* 221 Md. 294, 157 A. 2d 437, *cert. denied,* 363 U. S. 849 (1960), assumed the correctness of the standards discussed in *Bowen* as valid bases for establishing *venue.* In *Martel* an errant bartender at a Frederick County club absconded with the cash box and "lived it up" in Baltimore for a number of days.

Judge Hammond (later Chief Judge), for the Court, after pointing out that the issue raised involved venue rather than jurisdiction, stated:

"Appellant is not helped by claiming that it was not proven that *venue* properly was laid in Frederick County. The matter is not jurisdictional in the fundamental sense so that the question could be raised at any time and reviewed on appeal as in *Bowen v. State,* 206 Md. 368, 375, where it is reiterated that an offense against the laws of the State of Maryland can be punished by a Maryland court only when committed within its territory. Rather, the question is one of venue. There is no evidence that appellant was ever out of the State. His own testimony was that he blacked out in Frederick and woke up several hours later in Baltimore. *In embezzlement, the rule is that proper venue is the county where the act of appropriation or conversion took place, or where the intent to embezzle was formed, or where the property was entrusted, or where the accused is under an obligation to account. Bowen v. State, supra;* 18 Am.Jur. *Embezzlement,* Sec. 65. Almost always in the case of embezzlement, the determination of guilt must be inferential. There was evidence here from which the jury could find that any one, or all, of the necessary *standards* were met as to Frederick County. The money was entrusted to Martel there and it was there he was under an obligation to account. It could be inferred that the intent to convert and the actual conversion took

place on the afternoon of December 22 in Frederick County from, among other things, the fact that he was seen buying liquor in Frederick Monday afternoon, at a time when the evidence permitted the inference that he had unpaid financial obligations, and the fact that he had the money in Frederick that afternoon and did not have it that evening in Baltimore." (Emphasis supplied.) 221 Md. at 299, 157 A. 2d at 440.[9]

In *Peddersen v. State*, 223 Md. 329, 164 A. 2d 539 (1960), the appellant, manager of a Montgomery County farm, had among his duties, when directed by the owner, the sale of livestock; he usually chose to whom and at what price to sell and would receive and hold the proceeds for his employer. Pursuant to instructions and after negotiations with a buyer, the appellant hauled 60 head of cattle to Lancaster, Pennsylvania, where they were sold for $11,979. He requested that the check for the proceeds be made payable to him and returned with it to his home on the Montgomery County farm. Reporting the sale to the owner, he was instructed to mail the check to the owner's office in the District of Columbia. Ignoring those instructions, on the following day he returned to Lancaster, presented the check to the drawee bank and in exchange obtained two (2) treasurer's checks each payable to him in the amount of $5,390.63 — plus $1,197.93 cash. With the two checks and the cash in his possession, he returned to his home. The next day he journeyed to Frederick where he cashed both treasurer's checks and with the cash obtained again returned to his home. On the third day he revisited Frederick and with cash purchased from the same bank five (5) $1,000 United States Savings Bonds each made out to him as owner. Upon

9. *See* 22 C.J.S. *Criminal Law* § 136(j)(1961), where, concerning jurisdiction over embezzlement, it is stated: "In the absence of statute the crime of embezzlement is committed and punishable in the jurisdiction in which the money or property was converted," citing Bowen v. State, 206 Md. 368, 111 A. 2d 844 (1955). *See also* 22 C.J.S. *Criminal Law* § 185(11)(1961), concerning venue in the crime of embezzlement, where it is stated: "As a general rule a prosecution for embezzlement may be brought in the county where the property was converted or in the county where the accused was required to account.

returning home that evening he learned of impending litigation concerning custody of one of his wife's children by a former marriage and that same evening he drove his wife and children to an airport where they emplaned for the west coast. The next day he again drove to Frederick, parked his vehicle there and fled the State. Following his conviction of embezzlement, on appeal, in reliance upon the holdings in *Bowen v. State, supra,* he asserted that the evidence was insufficient in law to sustain a conviction of an embezzlement committed in Montgomery County.

In *Peddersen* Judge Horney, who delivered the opinion of the Court, after pointing out that in *Bowen, supra,* neither the fraudulent intent nor the active appropriation occurred in Maryland, found that there was factual evidence from which an inference could be drawn that both of these elements occurred in Maryland. After quoting 2 F. Wharton, Criminal Law (12th ed.) § 1289 (1932), that "[t]he defendant may be tried in any county where any part of the embezzlement was committed, or where, upon being called upon to account, he disowned having received the money," [10] he continued:

> "Other law writers have recognized that where intent plus possession is shown, this will be sufficient reason for a court to assume jurisdiction of the offense. See, for example, Clark and Marshall, *Crimes* (6th ed.), § 302:
>
>> '[T]he offense [of embezzlement] is complete whenever a person who has been intrusted * * * [with money or property] forms an intent to convert it to his own use, and has possession with such intent. A person, therefore, may be indicted for embezzlement in the jurisdiction in which he had possession of

---

[10]. He noted that in a later edition of Wharton on Criminal Law the portion quoted from § 1309 (cited in Bowen v. State, 206 Md. 368, 111 A. 2d 844 (1955)) had been deleted and that Larkin v. People, *supra,* n. 7, had held that under the New York statutes concerning embezzlement there had been no crime committed.

the property or money with intent to convert it to his own use * * * '.[11]

See also 3 Underhill, *Criminal Evidence* (5th ed.), § 582 [the place of embezzlement depends largely on where the fraudulent intent was formed]; 18 Am. Jur., *Embezzlement,* § 65 [the offense is committed where the property is received with intent to fraudulently convert it]." 223 Md. at 334-35, 164 A. 2d at 543.

Recognizing that "it is fundamental that an intent to appropriate money or property is a vital element of the crime of embezzlement," and that "courts are often faced with the difficulty of finding a clear showing of intent when there is no proof of an unequivocal act of appropriation within their jurisdiction," and that the intent which accompanies the formation of a plan to do an act is inherently difficult to prove by direct evidence, he stated:

"In addition to the law writers, the cases in other jurisdictions have long supported the rule that it is not necessary for the actual act of appropriation to occur within the territorial jurisdiction of the court if the essential element of fraudulent intent can be shown to have been formed either in the county where the property was received or in the county in which the property was possessed." 223 Md. at 335, 164 A. 2d at 543.

The standard stated in *Martel v. State, supra,* and originally announced in *Bowen,* that proper venue would lie "where the intent to embezzle was formed," was explicated in *Peddersen,* when it was stated:

"It appears, however, that that part of the generalization [in *Martel*] concerning intent needs

---

11. *See also* Clark and Marshall, Crimes § 3.02 (7th ed. 1967), restating the same quotation. It further provides that "[t]o constitute a conversion, however, there need be no disposal or expenditure of the money or property, but the offense is complete whenever a person who has been entrusted therewith forms an intent to convert it to his own use and has possession with such intent."

amplification. The authorities herein referred to clearly indicate that the essential element in embezzlement, as in numerous other criminal offenses, is that of intent, and that venue may be laid in any county *in which the money or property was received with intent to embezzle*, or in the county *in which the money or property was possessed and the intent to embezzle was formed*, regardless of the fact that actual conversion may have taken place in another county or state. We hold, therefore, that where there is evidence, as there was in this case, to show that the defendant had possession in a stated county of the money or property appropriated, and also evidence to support an inference that the fraudulent intent to embezzle had been formed in the same county, such evidence is sufficient to establish proper venue." (Emphasis supplied.) 223 Md. at 337, 164 A. 2d at 544.[12]

If under the holdings in *Peddersen* there was a valid basis for venue over embezzlement in Anne Arundel County — or in any of the other subdivisions of this state — the Maryland courts would, a fortiori, possess territorial jurisdiction over such embezzlement.

The statutes which created what is now known as the crime of "embezzlement" were enacted to make criminal certain types of conversion held to be outside the scope of common law larceny. The first such statute, enacted in England in 1799 (30 Geo. 3, c. 85 (1799)) provided that "if any Servant or Clerk, or any Person employed . . . by virtue of such Employment receive, or take into his Possession any Money, Goods [etc.] for or in the Name or on the Account of

---

12. *See* Waldrop v. State, 12 Md.App. 371, 278 A. 2d 619, *cert. denied*, 263 Md. 722 (1971), where the Court of Special Appeals concluded that the four alternative bases for venue announced in Martel v. State, 221 Md. 294, 157 A. 2d 437, *cert. denied*, 363 U. S. 849 (1960), were revised in Peddersen v. State, 223 Md. 329, 164 A. 2d 539 (1960), when the Court held that venue may be laid in any county in which (1) the money or property was received with intent to embezzle, or (2) in the county in which the money or property was possessed *and* the intent to embezzle was formed, regardless of the fact that actual conversion may have taken place in another county or state.

his Master . . . and shall fraudulently embezzle . . . the same, or any part thereof, . . . [he] shall be deemed to have feloniously stolen the same . . ." Its enactment resulted from the decision in the famous case of *Rex v. Bazeley*, 2 Leach C. C. 835, 168 Eng. Rep. 517 (1799), where a bank teller who directly pocketed and converted a deposit which came into his possession as teller was acquitted of larceny because he — not the bank — had the lawful possession of the deposit when it was converted. That statute, although it extended beyond the employees of banks and applied to "servants and clerks," evidenced an intent to fill the void left by the *Bazeley* decision. Although the statute of 7 and 8 Geo. 4, c. 29 (1827), was generally a revision of the laws concerning thefts, § 47 thereof remained essentially identical as to the 1799 enactment as to the offense of "embezzlement." [13]

Generally the crime of embezzlement is said to be committed when property belonging to another, rightfully in the possession of the accused, is feloniously appropriated, the gravamen of the offense being the intent coupled with its actual execution. *See* Clark and Marshall, Crimes § 12.18 (7th ed. 1967). It has also been defined as "the fraudulent conversion of personal property by a person to whom it was entrusted either by or for the owner." R. Perkins, Criminal Law, "Embezzlement" Ch. 4, § 3B at 288 (2d ed. 1969).[14] *See also* 26 Am.Jur.2d *Embezzlement* § 1 (1966). In accord with this general definition of "embezzlement" *see Jordan v. The James and Holstrom Piano Co.*, 140 Md. 207, 212, 117 A. 366, 369 (1922); *Williams v. United States Fidelity and Guaranty Co.*, 105 Md. 490, 494, 66 A. 495, 496 (1907).

In this country embezzlement statutes in effect in the various states are by no means uniform. *See Nolan v. State*, 213 Md. 298, 315, 131 A. 2d 851, 860 (1957). While the American statutes have in general been patterned after the

---

13. *See* Clark and Marshall, Crimes § 12.18 (7th ed. 1967); R. Perkins, Criminal Law § 3A at 286 (2d ed. 1969). *See also* Casenote to Nolan v. State, 213 Md. 298, 131 A. 2d 851 (1957), in 18 Md.L.Rev. 237, 238-41 (1958).

14. Cited with approval in Couture v. State, 7 Md. App. 269, 272, 255 A. 2d 84, 86 (1969).

English statutes many of them are worded so as to include within their purview much which would not be within the English embezzlement statutes. *See* Annot., 146 A.L.R. 532, 536-41 (1943).

Such general embezzlement statutes applicable to the fraudulent conversion of property accomplished without a trespassory taking have one principal element in common, *i.e.* that the property converted had been entrusted to the converter either *by* or *for* the owner; proscribing the fraudulent conversion by one who has been lawfully entrusted with possession of money or goods, they equally encompass the conversion by an agent, servant, etc., entrusted with the money or goods by his principal or master and subsequently converts them, as well as the conversion by an agent or servant where the money or property was delivered or received or taken into possession by him for or on account of his master or employer.[15]

Our statute is limited to the latter type agency relationship, it " ' is borrowed almost *verbatim*, from 39 George III, chapter 85, and 7 and 8 George IV, chapter 29, sec. 47. [39 Geo. III, Ch. 85, 1799, 7 and 8 Geo. IV, Ch. 29, Sec. 47, 1827].' " *Nolan v. State, supra,* 213 Md. at 312, 131 A. 2d at 858; *State v. Tracey,* 73 Md. 447, 448, 21 A. 366, 366 (1891); Clark and Marshall, Crimes, *supra,* § 12.18; R. Perkins, Criminal Law, *supra,* § 3A at 286.

---

15. In Brown v. State, 23 Tex. App. 214, 4 S. W. 588 (1887); State v. Sullivan, 49 La. Ann. 197, 29 So. 688 (1896); People v. Goodrich, 142 Cal. 216, 75 P. 796 (1904); Woodward v. United States, 38 App.D.C. 323 (Ct. App. 1912); State v. Serkau, 128 Conn. 153, 20 A. 2d 725 (1941); all cited with approval in Peddersen v. State, 223 Md. 329, 164 A. 2d 539 (1960), convictions of "embezzlement" all rested on statutes much broader and more comprehensive than the English enactments. Such typical statutes made it "embezzlement" for any agent to use, dispose of, conceal, misapply, secrete, purloin or appropriate to his own use any property belonging to his principal and under the care and control of the agent. Under the statute involved in Woodward v. United States, *supra,* the distinction between possession and custody by the agent was abolished.

Maynard v. State, 47 Ga. App. 221, 170 S. E. 265 (1933) — also cited with approval in Peddersen v. State, *supra;* People v. Brock, 21 Cal.App.2d 601, 70 P. 2d 210 (1937) and Heughan v. State, 82 Ga. App. 640, 61 S.E.2d 685 (1950) — cited in both Peddersen, *supra,* and Bowen v. State, 206 Md. 368, 111 A. 2d 844 (1955) — involved statutes similar to our "Larceny After Trust" statute. Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 353.

Our statute in pertinent part reads as follows:

"Whosoever being a cashier, servant, agent or clerk to any person, or whosoever being a cashier, servant, agent, officer, or clerk to any body corporate, or being employed for the purpose or in the capacity of a cashier, servant, agent, officer or clerk, by any person or body corporate shall fraudulently embezzle any money, goods, bill, note, bond, check, evidence or [of] debt, or other valuable security or effects which, or any part whereof, *shall be delivered to or received, or taken into possession by him, for or in the name or on account of his master or employer*, shall be deemed to have feloniously stolen the same from his master or employer, although such money, goods, bill, note, bond, check, evidence of debt, or other valuable security or effects was not received into the possession of such master or employer, otherwise than by the actual possession of his cashier, servant, agent, officer, clerk or other person so employed, . . ." (Emphasis supplied.) Maryland Code (1957, 1971 Repl. Vol.) Art. 27, § 129.

In *Nolan v. State, supra*, conviction of embezzlement was set aside where the facts established that he had committed larceny. In connection with the scope and application of Art. 27, § 129, Judge Collins, writing for the Court, observed:

"In *State v. Tracey*, 73 Md. 447, 448, 450, 21 A. 366, in referring to this statute, this Court said: 'This statute was enacted by chapter 310 of the Acts of the General Assembly of 1886. It is borrowed almost *verbatim*, from 39 George III, chapter 85, and 7 and 8 George IV, chapter 29, sec. 47. [39 Geo. III, Ch. 85, 1799, 7 and 8 Geo. IV, Ch. 29, Sec. 47, 1827]. * * * Having borrowed the law from England where an established construction prevails and has long obtained, it is reasonable to hold, that we have adopted it with the interpretation there accorded to it.' The appellee contends that, because

the English statute did not contain the words '*delivered to him*', which is in the Maryland statute above quoted, the English cases interpreting the English statute are not applicable here. However, we cannot see the force of this argument as money *delivered* is money *received* and the English statute contains the word 'received'." (Emphasis supplied.) 213 Md. at 312, 131 A. 2d at 858.

In 2 Russell, *Crime* § VII at 1243 (11th ed. 1958) [concerning the English statute] it is stated:

"Embezzlement only applies to property intercepted by the servant while it is on its way to, and has not yet reached, the master's possession. Therefore there can be no embezzlement of property which the master hands over to the servant either directly [*R. v. Hawkins* (1850) 1 Den. 584.] or indirectly through the hands of someone else — for example, of another servant. [*R. v. Murray* (1830) 1 Mood. 276.] But where the property is received on account of his master from some outside source by one servant and is by him passed over to a second servant to be handed by him to the master in the performance of his duty, and this second servant appropriates the property (whether goods or money), he is guilty of embezzlement. [*R. v. Masters* (1848) 1 Den. 332.]"

Since our statute, as well as the English statutes from which it was copied — unlike other general embezzlement statutes — is limited to the conversion of only such property as "shall be delivered to or received, or taken into possession . . . for or in the name or on account of [the] master or employer," the General Assembly by Ch. 831 of the Acts of 1945 enacted the "Larceny After Trust" statute codified in Code (1957, 1971 Repl. Vol.) Art. 27, § 353, which encompasses the conversion of property by any person who was lawfully entrusted with the possession of goods or property "for the purpose of applying the same for the use and benefit of the owner or person who delivered the goods,"

as where the owner parted with the possession of the goods and the receiver acquired them lawfully, without an existing intent to convert but who later, while in lawful possession, formed that intent.[16] The statute was created to reach those cases not within common law larceny where an individual lawfully entrusted with possession of goods thereafter converts them to his own use. *See Spillers v. State*, 10 Md. App. 643, 272 A. 2d 49, *cert. denied*, 261 Md. 728 (1971); *Farlow v. State*, 9 Md. App. 515, 265 A. 2d 578 (1970); *Connor v. State*, 6 Md. App. 261, 250 A. 2d 915 (1969).

Because of the restrictive nature of the application of our embezzlement statute the explication in *Peddersen* of the standard stated in *Martel* that venue in such cases may be found "in the county in which the money or property was possessed and the intent to embezzle was formed" requires further clarification. We hold that such "possession" must result from a delivery to or receipt by such cashier, servant, agent or clerk, or a taking into possession by him in such capacity "for or in the name or on account of his master or employer."

The appellant, as the attorney for Rogers, was an "agent" within the scope of our statute. *Dick v. State*, 107 Md. 11, 68 A. 576 (1908); *Gordon v. State*, 14 Md. App. 245, 286 A. 2d 833, *cert. denied*, 265 Md. 737 (1972); *Cooke v. State*, 9 Md. App. 303, 263 A. 2d 620, *cert. denied*, 258 Md. 726 (1970).

The trial court found from the evidence that the appellant had "formed or continued to retain a criminal intent to embezzle [the] funds of his principal"; if there was a valid basis for venue in Anne Arundel County — or indeed in any of the subdivisions of the state — then a fortiori there was territorial jurisdiction over the offense.

When Urciolo attended the settlement in Gott's office on May 25 or 26, 1965, the checks he brought with him, totalling $10,300, were not the money of his client Rogers, but funds

---

**16.** If one obtained possession of the property by delivery from the owner with an existing fraudulent intent of converting it to his own use he would be guilty of common law larceny. *See* Clark and Marshall, Crimes § 12.06 (7th ed. 1967) and the cases cited in n. 58. *See also* R. Perkins, Criminal Law, "Larceny," § 1.D.1., at 247 (2d ed. 1969).

raised by the partnership or syndicate with which to make partial settlement. There was no computation prior to his arrival at the settlement of any amount payable as Rogers' share from the settlement. Those checks, delivered by him to Gott, were turned over in kind to Chance; Chance negotiated them through his account and after deducting his share — between May 26 and June 12 — by his check to Gott remitted $3,108.37. None of the moneys brought by Urciolo to the settlement constituted such money or checks as were "delivered to or received or taken into possession [by him] for or in the name or on the account" of his client, Rogers. The appellant was not accused of embezzling the syndicate's moneys; his in-state possession of those funds cannot afford a valid basis for the requirement that the property here embezzled — the money of Rogers in the amount of $1,788.53 — was possessed by him within the state. When the trial court concluded as a basis for finding venue in Anne Arundel County — and thus territorial jurisdiction — that the possession of Urciolo in delivering the syndicate's checks to Gott at settlement gratified the requirement of "possession" within the principle set forth in *Peddersen, supra,* that venue would lie in the county "in which the money or property was possessed *and* the intent to embezzle was formed," the application by the trial court of that principle of law to the facts was in our view "clearly erroneous."

The Court of Special Appeals sustained venue, and. thus jurisdiction, on yet a different ground. Despite the lack of any such finding of fact by the trial court, that court concluded that there was a "permissible inference" that the appellant had designated Gott as *his* "agent" to deliver the check for $1,788.53 into his (Urciolo's) possession. Finding that "the words and actions of the appellant both before and after the settlement tend to show a fraudulent intent," the court rationalized that the requirement of "possession" was gratified by the possession of the check by Gott, on behalf of the appellant, which thus resulted in an "actual or constructive possession of Rogers' funds within the state" by Urciolo. Coupling Gott's "innocent agency" with Urciolo's

"fraudulent intent," the Court of Special Appeals concluded that there was venue, and hence jurisdiction, under the principles of *Martel* and *Peddersen.* We similarly disagree with that conclusion.

Although presence within the territorial jurisdiction of the state is necessary to subject a person to its penal laws, actual presence is not necessary to make a person amenable to the laws of a state for a crime committed there; the presence may be constructive rather than actual. It is generally held, assuming that the facts otherwise disclose an offense committed within the jurisdiction that the court of such state where it was committed is not deprived of jurisdiction by the mere absence of the defendant from the state at the time of its commission. 4 F. Wharton, Criminal Law and Procedure § 1506 (13th ed. 1957). *Hyde v. United States,* 225 U. S. 347 (1912); *Strassheim v. Daily,* 221 U. S. 280 (1911); *Simpson v. State,* 92 Ga. 41, 17 S. E. 984 (1893); *Adams v. People,* 1 N. Y. 173, 3 Den. 190 (1848). *See also State ex rel. Gildar v. Kriss,* 191 Md. 568, 575, 62 A. 2d 568, 570 (1948); Annot., 42 A.L.R. 272 (1926).

Where one absent from a state commits a crime therein through an innocent agent the absentee is liable in the state in which the crime was committed to indictment, trial and conviction. 21 Am.Jur.2d § 387 (1965). *See also* Annot., 42 A.L.R. 272, 275 (1926). The theory of this principle of law is that where one puts in force an agency for the commission of crime he in legal contemplation "accompanies the agency to the point where it becomes effectual." In other words, acts performed outside a state, by intending to produce and producing detrimental effects within the state justify that state in prosecuting and convicting the person who causes the harm as if he had been present at the commission of the crime. 21 Am.Jur.2d *Criminal Law* § 386 (1965); Annot., 42 A.L.R. 272 (1926). Typically, if a person, while in one state sets in motion a force which operates in another state, the actual presence of the offender in the other state is not necessary to make him amenable to its laws for the crime committed there, if an offense is the immediate result of his action. 21 Am.Jur.2d *Criminal Law* § 386 (1965). This

principle has been applied where one delivers counterfeit money or a forged instrument to a child of tender years or to an innocent adult, with instructions to pass and utter the same and the act is done. *See* Clark and Marshall, Crimes § 4.00 at 207 (7th ed. 1967). *See Adams v. People, supra,* where one who in Ohio addressed a letter to a person in New York and obtained money by false pretenses upon presentation in New York of the letter by an innocent agent was held guilty as a principal in New York. *See also Commonwealth v. White,* 123 Mass. 430, 25 Am. Rep. 116 (1877) (larceny) and *Commonwealth v. Thomas,* 410 Pa. 160, 189 A. 2d 255, *cert. denied,* 375 U. S. 856 (1963) (conspiracy).

In applying these principles of criminal culpability to the facts in this case the reliance by the Court of Special Appeals upon the holdings in *Simmons v. State,* 165 Md. 155, 167 A. 60 (1933); *Commonwealth v. Wood,* 142 Mass. 459, 8 N. E. 432 (1886); and *Carter v. State,* 143 Ga. 632, 85 S. E. 884 (1915) is misplaced. *Simmons* involved neither a charge for embezzlement nor an issue of venue or jurisdiction. The appellant there was convicted of obtaining money from the Citizens Bank of Hurlock by false pretenses; he had directed the bank to pay out the funds to persons designated by his written order. Our predecessors there stated that:

> "While . . . the money did not manually pass from the possession of the bank to the actual possession of the traverser, the money of the bank was so situated that the bank could and did make a complete transfer of the money to the traverser without actual delivery to him; and such transfer was effected by the bank paying out its money on the order of the traverser to his nominees by reason of the prior false and fraudulent pretense or representation by the traverser to the bank . . . ."
> 165 Md. at 162, 167 A. at 63.

Although the Court did state that the "bank was made the 'innocent agent' of the traverser to pay to the parties indicated for the traverser's use and benefit the several sums of money agreed to be paid by the bank, for the

traverser," it nonetheless pointed out that "[t]he passage of the title, possession and control of the money from the bank to the indicated third parties at the traverser's request, or in accordance with his written order, was an obtaining of the money by the traverser as fully and completely as if the physical delivery had been made to the traverser in person. [Citations omitted]. . . ." 165 Md. at 163, 167 A. at 63.

*Commonwealth v. Wood, supra,* similarly involved a charge of false pretenses. The appellant, Wood, by a letter written in Minneapolis made false representations unto Peters at his place of business in Massachusetts which induced Peters to send Wood a bank draft in New York. The court there stated that:

> "Although the defendant received the money on the cashier's draft in New York or in Minneapolis, it cannot be doubted that the offense charged in the indictment was *accomplished and completed* at Berlin [Massachusetts] when Peters, at the request of the defendant, sent him the draft, whether he sent it by the hand of an agent of the defendant, or deposited it in the mail. . . . [I]f he sent it by a carrier or other agent of the defendant, the delivery to the agent was a delivery to the defendant. *Com. v. Taylor,* 105 Mass. 172.
>
> So, if he sent it by mail, when he deposited it in the post-office, it passed out of his [Peters'] control into the control of the defendant, and the postmaster was the agent of the defendant to forward the letter to him. *Regina v. Jones,* 4 Cox C. C. 198." (Emphasis supplied.) 142 Mass. at 462, 8 N. E. at 434-35.

The distinction between false pretenses and embezzlement was emphasized in *MacEwen v. State,* 194 Md. 492, 71 A. 2d 464 (1950), where it was stated:

> "While embezzlement is sustained by the diversion of a single sum of money at a particular time, in many cases it runs for a long period of time and consists of converting different sums of money on

many dates to the use of the thief. False pretenses is not such a crime, and differs from the crime of embezzlement. In *false pretense* the money, or other personal property, is obtained from the owner *by means of fraud;* in embezzlement the property appropriated is *not obtained by fraud,* but *is received* by the culprit *lawfully.* It seems to the court plain that acts of embezzlement cannot be proved in a trial for false pretenses for the purpose of showing that the culprit intended to commit false pretense." (Emphasis supplied.) 194 Md. at 503, 71 A. 2d at 468-69.

The holdings in *Carter v. State, supra,* are to the same effect as those in *Commonwealth v. Wood.* There the president of a local Georgia bank, while out of the state, with the intent to convert certain stock certificates, the property of the bank, sent a telegram to the cashier directing him to transmit the stock certificates on the pretext that he would return them. The cashier, in compliance with the request, mailed the stock certificates to him at an out of state address and he there converted them to his own use. The Supreme Court of Georgia, although recognizing that "[i]f the fraudulent intent by the bank's official to convert the bank's property to his own use was first conceived and formed by the official while in another State and in possession of the bank's property, the crime of embezzlement would not be committed in the jurisdiction of this State," continued:

"But if the official in another State concocts the crime there and executes it in this State, his actual presence in this State is not necessary in order to make him amenable to the laws of this State. A person in one jurisdiction may put in force an agenc; or force which does harm in another jurisdiction, and he will be considered constructively present at the place where by his command or authority his act is executed." 143 Ga. at 639-40, 85 S. E. at 887.

Concluding that Carter had violated the Georgia "embezzlement statute" the court stated:

> "The fraud of the president in requesting the cashier to send him the stock was his means of procuring the bank's property for a subsequent conversion. It is true that he was not personally within the State at that time, but he was here in purpose and design. When he employed the telegraph company to deliver his telegraphic request to the cashier in Gilmer county, he made that company his agent." 143 Ga. at 640, 85 S. E. at 887.

Although convicted of "embezzlement," the statute involved subjected to criminal penalties "[a]ny officer, servant, or other person employed . . . in any bank or other corporate body . . . or any president, director, or stockholder of any bank or other corporate body . . . who shall embezzle, steal, secrete, or fraudulently take and carry away any money, paper, book, or other property or effects. . . ." 143 Ga. at 633, 85 S. E. at 884. That general statute did not recognize the distinctions preserved in our law between false pretenses, embezzlement, larceny and larceny after trust. The fraudulent conduct perpetrated in *Carter*, although called "embezzlement," was strikingly similar to the fraud perpetrated in *Wood* by false pretenses.

In the crime of obtaining property from another by false pretenses the gravamen of the act is the obtention of the property from the victim coupled with a delivery of it to the culprit — or his designee. In embezzlement the mere transmittal of the property to the converter is not such a crucial criminal act as can by itself constitute a conversion. In *Simmons* the bank, after being victimized, was also the agent for effectuating delivery. In both *Wood* and *Carter* delivery was made through innocent agents after the false representations had taken effect upon the victims and the crimes became complete by such delivery. The common thread running through the holdings in both *Wood* and

*Carter* is that the acts performed outside the state intended to produce and did in fact "produce detrimental effects within the state" in that a force had been set in motion outside the state which resulted in the completion and consummation of the crime within the state.

In *Medley v. Warden,* 210 Md. 649, 123 A. 2d 595, *cert. denied,* 352 U. S. 858 (1956), in finding jurisdiction over forgery at the place where the false instrument was uttered, this Court held that: "[j]urisdiction over the subject-matter may attach where acts are performed in one state with the intention of producing *an illegal effect in another,* or where the crime is *consummated. State v. Kriss,* 191 Md. 568, 575 [62 A. 2d 568, 570 (1948)]; *Restatement, Conflict of Laws,* § 65 and § 428. See also *Bloomer v. State,* 48 Md. 521, 535 (1878), and *Stout v. State,* 76 Md. 317 [25 A. 299 (1892)]." (Emphasis supplied.) 210 Md. at 652, 123 A. 2d at 596.

The application of the doctrine of criminal culpability from acts of an innocent agent within the state, as a result of perpetrating conduct from without the state, requires evidence to establish that the act performed by the innocent agent within the state brought about or resulted in the consummation or completion of the crime within this state.[17] There was no evidence from which it could be concluded that the acts of Gott in Annapolis constituted the completion of an embezzlement there; the mere delivery by Gott — without any intent to convert on his part — of the check to the appellant would not constitute such a completion or consummation of embezzlement under our statute. If there was any evidence — and we can find none — that the appellant had directed Gott, assuming him to be the agent of Urciolo, to perform acts within the state which effectively constituted an appropriation or conversion of the funds of Rogers — and thus an embezzlement under the holdings in

_____

17. In applying the doctrine it is necessary "to discriminate with great care between acts essential to the crime and acts merely incidental thereto." 21 Am.Jur.2d *Criminal Law* § 385, at 404 (1965); 4 F. Wharton, Criminal Law and Procedure § 1507, at 88 (1957), both citing Dealy v. United States, 152 U. S. 539 (1894) and Stewart v. Jessup, 51 Ind. 413, 19 Am. Rep. 739 (1875).

*Peddersen* — the application of the principle would have been appropriate, but under the facts in this case it appears to us that the principle was misapplied by the Court of Special Appeals.

Nor can we agree that the possession of the check by Gott at the time he drew it and transmitted it to the appellant resulted in an "actual or constructive possession [by Urciolo] of Rogers' funds within the state." In our view it is most material as to whether or not Urciolo had actual or only vicarious possession within the state.

Although Gott could not recall whether the check had been mailed to the appellant in Washington, D. C., or delivered to him in person, his letter of June 10 advised that it would be *sent* and the trial court assumed it had been mailed. There was no evidence of an actual delivery in Anne Arundel County and the conclusion is compelled that the only "actual" possession by Urciolo was the receipt of the check at his offices in the District of Columbia and the negotiation and deposit of it in the checking account of him and his wife.

Our statute (Art. 27, § 129), as well as the English statutes on which it is based, provide for the conversion of property "delivered to or received, or taken into possession by [the agent, etc.] for or in the name or on account of his master or employer . . . although such money, goods . . . was not received into the possession of such master or employer, otherwise than by the *actual* possession of his cashier, servant, agent, officer, clerk, [etc.] . . . ." (Emphasis supplied.)

In *Loker v. State*, 250 Md. 677, 245 A. 2d 814 (1968), *aff'g Loker v. State*, 2 Md. App. 1, 233 A. 2d 342 (1967), *cert. denied*, 393 U. S. 1082 (1969), in rejecting a contention by Loker that he had been improperly convicted of larceny, rather than embezzlement — under one of the counts of the indictment — we stated:

"In *Nolan* our predecessors adopted certain of the English cases maintaining the various distinctions

between embezzlement and larceny. In none of them is there any authority for extending the established doctrine of constructive possession to any alleged wrongdoer not in actual possession and the case of *Reg. v. Wright*, Dears & B. Crown Cas. 431, 441, 442, cited with approval therein shows that the accused must have *actual* possession before he can successfully maintain that his crime was embezzlement rather than larceny." (Emphasis supplied.) 250 Md. at 687, 245 A. 2d at 820.

*See also Regina v. Masters*, 1 Den.Cr.Cas. 332 (1848), cited in 2 Russell, Crimes § VII, at 1243 (11th ed. 1958), where Pollock, C. B., in sustaining the conviction of Masters for embezzlement — and not larceny — rejected the contention of the defendant that the moneys paid by customers of his employer into the hands of other servants before reaching him constituted a possession in the master of such moneys.

In *Commonwealth v. Hays*, 80 Mass. 62, 14 Gray 62 (1859), under a statute similar to ours punishing any person to whom money, goods, or other property "shall have been delivered" who shall embezzle the same, it was held that the statute did not apply to cases where the element of a breach of trust or confidence in the fraudulent conversion of money or chattels is not shown to exist.

Although the term "actual possession" as used in our statute, in *Regina v. Wright*, Dears. & B. Cr. Cas. 431, 441, 442, 7 Cox Crim. Cas. 413, 417, 419 (1858), and in *Regina v. Masters, supra*, is used to differentiate the statutory crime of embezzlement from common law larceny and is directed at the relationship between the servant and the employer, it could . be argued, in view of the statutory use of the term "actual possession," rather than mere "possession," that the doctrine of "constructive possession" is inapplicable under the language in our embezzlement statute. That our statute, by interpretation, is directed as it is at "a breach of trust or confidence" by a fraudulent conversion of such property as shall be "delivered

to or received or taken into possession by the agent, servant, etc., for or in the name or on account of his master or employer," might additionally give validity to such an argument; however, under the facts here we need not so decide.

Although in 1964 Gott was retained as co-counsel with the appellant for the Rogerses in connection with the case to void the tax sale deed, there was no evidence of a continuation of that relationship at the time of settlement in 1965 when Gott acted as "settlement officer." As such he was serving in a capacity which might more accurately be described as an "escrow's agent" or an "escrowee," serving solely as the instrumentality designated to effectuate and process the settlement for all the interested parties. *See Campen v. Talbot Bank of Easton,* 271 Md. 610, 616, 319 A. 2d 125, 129 (1974).

When Gott on June 12, 1965, issued his check upon his own trustee account in the amount of $1,788.53 payable to "Raphael G. Urciolo, Attorney," he was undertaking to disburse as "settlement officer" the balance of the funds computed as payable to Rogers. The funds due Rogers under the check thus originated with him; he was, as pointed out in 2 Russell, Crime, *supra,* at 1243, the "outside source" of the moneys due Rogers which he undertook to deliver to the appellant, as Rogers' agent. Gott could not at one and the same time be both the originator and consignor of the funds due Rogers and also be a recipient and possessor of those same funds for the agent. There is no evidence that Urciolo ever directed Gott, after he issued the check, to assert or to retain any independent possession of the check.

We have been referred to no case, and our own research has led us to none — either in the American or English courts — where the possession on the part of one who is the originator and payor of funds delivered by him to a converter has been equated with a possession in the embezzling cashier, servant, agent, officer, or clerk. Such possession patently could not under our statute be a possession "in the name or on account of . . . [the other

servant's] master or employer," nor, without more, would such possession by him arise out of a fiduciary relationship.

Applying the holdings in *Peddersen, supra*, we find that although there may have been an existing and transitory intent on the part of the appellant, there was neither a receipt by him nor was there possession in him of the check due Rogers in the amount of $1,788.53 in Anne Arundel County.

We need not here concern ourselves with the application of the doctrine that venue will lie at the "place to account" since neither the trial court nor the Court of Special Appeals predicated their respective decisions on such doctrine. We point out, however, as in *Bowen v. State, supra*, assuming the doctrine to be applicable — and we do not so decide — that the office of the appellant was in Washington, D. C., and the residence of John Rogers was in Arizona; there was no duty to account in Anne Arundel County.

An offense against the laws of this state is punishable only when the offense is committed within its territory. *Goodman v. State*, 237 Md. 64, 205 A. 2d 53 (1964); *Breeding v. State*, 220 Md. 193, 151 A. 2d 743 (1959); *Bowen v. State, supra*.

Since upon the facts of this case there was no possession coupled with an intent to embezzle in Anne Arundel County which would constitute an appropriation or conversion there, under our statute as interpreted, and since the only act of appropriation was the appellant's overt and explicit act of conversion within the District of Columbia, there was no venue in Anne Arundel County, nor in any other judicial subdivision of this state and hence, under *Bowen v. State, supra*, no territorial jurisdiction in this state.

## II

### *VARIANCE*

In view of the result reached concluding a lack of jurisdiction over the appropriation by the appellant, we find it unnecessary to pass upon the question: whether there was a fatal variance between the allegations in the indictment of

the embezzlement of $7,500 United States Currency and proof which established an embezzlement by a check for $1,788.53.

> *Judgments of the Court of Special Appeals and of the Circuit Court for Howard County reversed; case remanded to the Circuit Court for Howard County for the entry of an order of dismissal to the third count in indictment No. 5139; costs to be paid by Anne Arundel County.*